GEORGE S. PROUD AND MARY E. PROUD, HIS WIFE, DEFENDANTS IN ERROR, v. THE PHILADELPHIA AND READING RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 20, 1900—Decided June 18, 1900.

A railroad company is bound to inspect its trains, but not to keep up a continuous inspection, or to know at each moment the condition of every part of a train.

On error to the Supreme Court.

For the plaintiff in error, *J. Willard Morgan* and *Samuel H. Grey.*

For the defendants in error, *Howard Carrow.*

The opinion of the court was delivered by

ADAMS, J.    The plaintiffs, George S. Proud and Mary E. Proud, his wife, brought suit to recover their damages resulting from an injury received by the wife.    On the night of March 8th, 1899, Mrs. Proud took the defendant's ten thirty-eight train at the Reading Terminal, in the city of Philadelphia, to go to the Huntingdon street station, in the same city. Two other ladies and a gentleman, a Mr. Springer, were in the party.    The first station after leaving the Terminal is at Spring Garden street; the second at Columbia avenue; the third at Huntingdon street.    The regular running time from the Terminal to the Huntingdon street station was eleven minutes.    The distance is from two to three miles.    When the train had stopped at her destination Mrs. Proud attempted to alight.    As she was about to step down to the upper step from the front platform of the car in which she had ridden, Mr. Springer, who had preceded her, and was standing on the station platform said, " Look out, Mrs. Proud !"    At that instant she slipped on some vomit with which the steps were covered, and which Mr. Springer had just detected and was trying to warn her against, fell and was badly hurt.    The offensive matter was not frozen, though the night was cold, which tended to show that it had been recently deposited.    The platform at that place was neither very dark nor very light. Mrs. Proud being asked, " Was the station light or dark ? " answered, " I cannot remember.    I do not think it is so very light there, but it was not light enough for me to see what was on the steps."    Mrs. Willetta Fitzgerald, one of the party, who immediately followed Mrs. Proud and slipped and nearly fell herself, said, " It seemed quite dark to me, coming out of a lighted car."    Miss Frances Smith, another of the party, said, " It was a little dark ; I could just see something on the steps."    Mr. Springer said, " I got off the car, and when I turned round to assist Mrs. Proud off I saw there was something on the first step below the platform of the car. * * * The car, to the best of my knowledge and belief, stopped just in between two electric lights.    The station is

lighted by these, either lamps or incandescents, I don't. know which, but the car was just between these two lights, and it was quite dark right at that point." It appeared, also, that at the moment of the accident, or almost immediately after it, the conductor was standing on the rear platform of the car next in front of that from which Mrs. Proud fell.

The declaration alleges that the defendant " carelessly and negligently permitted filth and vomit to remain on the platform and steps of the car in which said Mary E. Proud was a passenger," and that this occasioned her injury. At the close of the plaintiffs' case the defendant asked the trial judge to direct a verdict for the defendant. This motion was denied and exception taken. At the close of the whole case the motion was renewed and again denied and exception taken. The plaintiffs recovered separate verdicts. Error has been assigned on the exceptions.

The motions to direct a verdict presented to the trial judge the question whether from the facts in proof the jury could attribute negligence to the defendant. What, then, were the facts that bore on this question?

It appears that the cars that composed this train came into the Terminal at fourteen minutes past ten o'clock in the evening, and that they went out at ten thirty-eight o'clock, as before mentioned. In this interval of twenty-four minutes, after the incoming passengers were discharged and before the outgoing passengers were admitted, it was the duty of the car cleaners to inspect the train and see to it that it was in good order. Two witnesses were called on behalf of the defendant to prove that this duty was performed—Charles Stuart Kelso, night foreman of car cleaners at the Reading Terminal, and Nicholas Blanch, a car cleaner, employed at the same station. Kelso testified that he had charge of the cleaning of the platforms of the cars and of the ten thirty-eight train on the night of March 8th, 1899 ; that he personally inspected the train ; and that the condition of the cars as to cleanliness, when the train left the Terminal, was all right. Blanch testified that he had to do with the cleaning of the ten thirty-eight

train on the night of March 8th, 1899, and that it was cleaned ten or fifteen minutes before it started out. Kelso was asked, specifically, whether there was any vomit on the forward platform of any car on the train and answered " No." Blanch was asked, specifically, whether there was any vomit on any of the platforms of the train when it left the Terminal, and answered " No." The declaration alleges that this offensive substance was on the " platform and steps." The proof is that it was on the steps. The specific evidence of Kelso and Blanch that there was no such substance on any platform did not, therefore, in terms, meet the proof. No attention was paid to this discrepancy by the trial judge, or by counsel on either side upon the argument in this court. Under the circumstances it is fair to disregard it, and to assume that the testimony of these two witnesses amounts to a general averment that they made an inspection of the train ten or fifteen minutes before it started and that the cars were in good condition, and also to a specific averment that this nuisance did not then exist.

In the cross-examination of Kelso this passage occurs :

"*Q.* You are stationed at the Terminal?

"*A.* Yes, sir.

"*Q.* And between ten fourteen and ten thirty-eight you looked after this train—did you do it yourself or have men under you do it ?

"*A.* I did it myself; I inspect all the trains.

"*Q.* Well, now, after you get through looking at them, who looks after them ?

"*A.* The train crew."

There is no evidence as to the number of passengers who alighted from and who entered the train at the two stations intermediate between the Terminal and Huntingdon street, or to show whether any of them traversed the forward platform of the car in which Mrs. Proud was riding, or used the steps on which she afterwards fell. Nor is there any evidence as to the movements of any member of the train crew on the run from the Terminal to the place of the accident, or as to the number of cars or of brakemen.

A railroad company has two means of informing itself as to the condition of the cars of one of its trains; first, inspection, made while the train is at rest, by persons assigned to that service; and, secondly, the cursory and current observation of those members of the train crew whose duty requires them to be on and in the cars while the train is in motion, and who are expected, as they go about their business, to have an eye to their surroundings. Inspection, to be valuable, must be thorough and deliberate. The observation that the conductor and brakeman on a moving train may reasonably be relied on to make is necessarily incidental to the performance of other duties, and so is less exhaustive than regular inspection.

This being the scope of the defendant's obligation to inform itself as to the condition of this train, it is evident that there was an obstacle to the plaintiff's recovery. The defendant had duly performed its duty of formal inspection, and there was no evidence to show that in the brief interval that had elapsed since the inspection was made either the conductor or any one of the brakemen had been so situated, in the discharge of his duties, that observation would have disclosed to him the presence of this substance upon these front steps of the car in which Mrs. Proud was a passenger. The platform and steps were in themselves unobjectionable. Their condition had been inspected and approved within half an hour. The nuisance was one of the existence of which neither the conductor nor a brakeman would naturally have notice or warning. The evidence, therefore, would not have justified the jury in concluding that the defilement of the steps was a thing that the employes of the defendant should have apprehended or looked for or discovered. It is against dangers which may reasonably be expected by a carrier that it must exercise a high degree of care on behalf of its passengers. As the proof does not show that due care would have prevented the accident it does not support a verdict for the plaintiffs.

The presence of snow or ice on the steps of a public vehicle makes a case that both resembles and differs from that now

before us. The resemblances are obvious. One difference is that both the common carrier and the passenger are apt to have notice of the presence of snow or ice, whereas no one had warning of this deposit. In *Palmer* v. *Pennsylvania Co.*, 111 *N. Y.* 488, it was held that a railroad company is not bound to keep up a continuous inspection of a train during the prevalence of a snow storm. Other cases more or less pertinent are *Kelly* v. *Manhattan Railway Co.*, 112 *Id.* 443; *Weston* v. *New York Elevated Railroad Co.*, 73 *Id.* 595; *Neslie* v. *Passenger Ry.*, 113 *Pa. St.* 300; *Fearn* v. *W. J. Ferry Co.*, 143 *Id.* 122; *Gilman* v. *Boston and Maine Railroad*, 168 *Mass.* 454; *Shepherd* v. *Midland Railroad Co.*, 25 *L. T.* (*N. S.*) 879.

The judgment is reversed.

*For affirmance*—None.

*For reversal* — MAGIE (CHANCELLOR), DEPUE (CHIEF JUSTICE), VAN SYCKEL, DIXON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 13.