VANCLEVE, Respondent, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 26, 1904.

1. **CARRIERS OF PASSENGERS: Negligence: Slippery Steps.** It is the duty of a railroad company carrying passengers, before it pulls out from its station, to see that all parts of its cars are in a safe condition and to remove from its steps snow, ice or other foreign material that might cause a passenger to slip in getting upon or leaving the cars.

2. ———: ———: Inspection. But the company is not bound to keep up a continuous inspection of its cars while en route, and where mud was carried upon the steps of a car by the feet of passengers boarding the train, without the knowledge of the employees of the company in charge of the train, after the start at eight o'clock in the morning, a passenger, who, in attempting to alight at his destination between eleven and twelve o'clock, can not recover damages for injuries received by slipping and falling from a step whereon mud had so accumulated.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED.

*Faris & Oliver* for appellant.

(1) The court erred in overruling the demurrer to the evidence at the close of plaintiff's testimony. The testimony of plaintiff showed that the soil in Arkansas and Missouri, along the route traversed by the train in question, on the morning of the alleged accident, was of a black, sticky nature; that it had rained the night before and had been raining on the morning of said accident. It was not the duty of appellant to stop and clean its coach platform steps en route, in view of the circumstances. So held in case of sleet, ice and snow. Palmer v. Pennsylvania Co., 2 L. R. A. 252; Unger v. Railroad, 51 N. Y. 497; Fearn v. Ferry Co., 143 Pa. 122; Proud v. Railway, 50 L. R. A. 468; Neslie v. Railroad, 113 Pa. 300. (2) Plaintiff failed to show when or, except by inference, how the mud in question was deposited upon the steps, nor how long it had been suffered to remain there. 1 Shearman & Redfield on Negligence (4 Ed.), sec. 59; Yarnell v. Railway, 113 Mo. 580; Feary v. Railroad, 162 Mo. 75.

*Duncan & Bragg* and *Brewer & Collins* for respondent.

Even if the court did commit error in refusing defendant's demurrer to the evidence at the close of the plaintiff's case, such error was waived by appellant putting in its own evidence.  Clark v. Railway, 93 Mo. App. 456; McPherson v. Railway, 97 Mo. 253.

BLAND, P. J.—The suit is to recover damages on account of personal injuries alleged to have been received by respondent in alighting from a passenger coach of appellant, on November 19, 1902, at Caruthersville, Missouri.    The petition alleges that respondent was injured by stepping on and falling from the steps of appellant's coach; that she was caused to slip by reason of mud that was negligently permitted by appellant to be upon the steps of the coach.

The answer was a general denial with a plea of contributory negligence.  Verdict and judgment for four thousand dollars were given in favor of plaintiff.

The evidence shows that respondent boarded the appellant's train at Yarbro, Arkansas, to be carried to Caruthersville, Missouri, the northern terminus of the road; that the train was made up at Yarbro and left there about eight o'clock a. m. on November 19, 1902, and arrived at Caruthersville between eleven and twelve o'clock a. m. on the same day; that it had rained the day and night previous and the ground was muddy along the route; that the soil was of a black, sticky nature when wet; that there were several stations at which the train stopped en route and received and let off passengers, some thirty-five or forty in all, most of whom were carried to Caruthersville; that the train was a mixed one, consisting of freight cars and one passenger coach; that when the train arrived at Caruthersville the steps of the passenger coach were muddy.  Some of the witnesses say there was considerable mud on them.  A thirteen-year-old boy, who was present when the train arrived, said there were two spades full of mud on the

three steps, the greater portion being on the second or middle step.

Respondent paid her fare when she boarded the train at Yarbro and when the train arrived at Caruthersville, she proceeded to disembark. She described what then occurred as follows:

"As I was coming out of the train at Caruthersville my foot slipped and I fell; I went to make the second step, my foot slipped, the steps were muddy. I was coming out of the train, taking my time, and in the ordinary way of getting off the train. My foot was on the second step from the platform of the train when it slipped—the steps leading from the coach to the platform. When I slipped I was moving, taking my time. I had one foot on the second step of the coach when I made my second step; when I raised that foot my right foot slipped from under me. I had my right foot on the second step of the coach. The mud which was on the steps of the passenger coach I was getting off of caused to slip."

She had a valise in one hand and said she had hold of the hand rail with the other hand at the time she slipped; that she paid no particular attention to the steps until she felt her foot slipping and then looked down and saw that the step was muddy.

There is no direct evidence as to the condition of the steps when the train left Yarbro, but it is in evidence that the cars and steps were always cleaned when they arrived there and also at Caruthersville, by employees of the appellant, therefore, it is presumptively shown that the mud on the steps of the car accumulated en route from the feet of passengers boarding the train at the intermediate stations when the train stopped. A good many passengers (estimated at twenty or thirty) preceded respondent from the train in safety, without slipping on the steps of the car; others also followed in like manner.

Respondent testified that she was twenty-seven

years old at the time of her injury, was strong, in good health, was without physical infirmities, and had worked all the previous season hoeing and picking cotton in Arkansas.

There is no evidence showing or tending to show that any of appellant's servants in charge of the train knew or had notice that the steps were muddy and slippery.

At the close of the evidence appellant moved that respondent be nonsuited. The court refused to grant the motion. It is contended by appellant that this action of the court was erroneous; that on all the evidence it is not shown that appellant was guilty of any negligence. It is well-settled law that the duty of a steam railroad to its passengers is, as far as it is practicable by human care and foresight, to carry them safely, and it is responsible for all injuries from any, even the slightest, neglect. Lemon v. Chanslor, 68 Mo. 340; Furnish v. Railway, 102 Mo. 438; Clark v. Railway, 127 Mo. 197; Muth v. Railway, 87 Mo. App. 422; Young v. Railway, 93 Mo. App. 267; Fillingham v. St. Louis Transit Co., 102 Mo. App. 573, 77 S. W. 314. After a passenger boards the car of a railroad company by the express or implied consent of the company to be carried thereon, the relation of carrier and passenger begins and continues until the passenger is allowed a reasonable time to leave the car on its arrival at his destination. 4 Elliot on Railroads, sec. 1592; Cullar v. Railway, 84 Mo. App. 340; Atkinson v. Railway, 91 Mo. App. 489; Young v. Railway, supra. A railroad company owes these duties to a passenger whom it undertakes to carry for hire on a freight or mixed train, the same as on a regular passenger train, the only difference being that the passenger submits himself to the inconvenience of such a train and assumes whatever dangers are necessarily incident to that mode of conveyance. Parsons v. Railway, 94 Mo. 289; Wait v. Rail-

way, 165 Mo. 612; Dorsey v. Railway, 83 Mo. App. 528; Fullerton v. Railway, 84 Mo. App. 498.

But railroads as carriers of passengers are not liable as insurers of their lives and safety and are not, therefore, liable for inevitable accident or for every possible casualty, but are only liable for such injuries as result from the negligence of the company in failing to exercise due care for the protection and safety of its passengers. What is or is not due care in a particular case, is generally a question of fact for the jury. If there is no doubt of the existence of the fact complained of, yet if there is substantial doubt as to the reasonable and natural inference to be drawn from the fact, it should be submitted to the jury. McKee v. Bidwell, 74 Pa. 218; Crissey v. Railway, 75 Pa. 83. There is no doubt of the existence of the fact that mud had accumulated on the steps of the car in which respondent was a passenger and that she slipped and fell from the steps as she was alighting from the car. Whether or not the inference of negligence against the company for permitting the mud to be on the steps, can be drawn or not, depends upon when and by what means the mud was deposited and whether or not the company's servants knew of its presence, or by the exercise of due care could have known it and, if they did know of it, whether or not it was so obviously dangerous that not to remove it was negligent. The fair inference to be drawn from the evidence is that the mud was carried and deposited on the steps by the feet of passengers getting on and off the train while en route; that it was not present when the train pulled out from Yarbro, where respondent was received as a passenger. If this be so then the mud was not brought upon the steps by the company nor was it brought there through any agency of the company. But the car was the company's and if it was its duty to inspect the car and see that all parts of it were kept in a reasonably safe condition while en

route, and if the steps, by reason of the mud, became dangerous and the servants of the company knew of this danger, or by inspection could have known of it, and failed to make the inspection, the company was guilty of negligence and should be held liable for the injuries received by the respondent in falling from the steps. There is no evidence that any of the company's servants on the train knew that mud had accumulated on the steps, nor does the evidence show that the danger caused by the presence of the mud, if it was dangerous, was obvious or so apparent as to suggest to a reasonably prudent man that it should be removed. According to the evidence, twenty or thirty passengers were upon the car when it arrived at Caruthersville, most all of whom preceded respondent and alighted in safety from the car by way of the same steps on which she slipped. While this evidence is not conclusive that the steps were reasonably safe, it indicates their condition and tends to rebut the inference that they were so obviously dangerous as to require a prompt removal of the mud and to take away the legal imputation of the want of the exercise of due care on the part of the company's servants in failing to remove it. The law is that it is the duty of the railroad company carrying passengers, before it pulls out from its starting station, to see that all parts of its cars are in a safe condition and to remove from its steps snow, ice or other foreign material that might cause passengers to slip or stumble in getting upon or leaving the cars.

In Gilman v. Railroad, 168 Mass. 454, it was held: "In an action against a railroad corporation for personal injuries occasioned to the plaintiff by slipping upon an accumulation of snow and ice on a step of one of the defendant's cars, which was part of a train that had run from R. to B., a distance of thirty-five miles, there was evidence of a snow storm which lasted all day in S., about midway between R. and B., and most

of the day in B.; that it stopped snowing in B. at nine o'clock in the evening, and was not snowing in S. a little over half an hour later when the plaintiff took the train there for B., where the accident occurred as he was leaving the train; and that the snow was hard, as if it had been there some time. Held, that the jury were warranted in finding that the snow and ice were on the steps of the car before it left R., and that the defendant was liable for not having cleared the step.''

But if snow or ice, or any slippery substance, accumulates or is deposited on the steps of a car while the train is en route, by agencies other than those of the company, the law seems to be that it is not negligence to fail to remove such substance, for the reason the company is not bound to keep up a continuous inspection of its cars while en route. The following cases are in point:

In Proud v. Railway, 50 L. R. A. 468, it is said; ''A railroad company is bound to inspect its trains, but not to keep up a continuous inspection, or to know at each moment the condition of every part of a train,'' and it was held that the company was not liable to a passenger who, when alighting from the train, stepped on some vomit, that had been deposited on the platform and steps while the train was en route, causing her to slip and fall and to be injured.

In Palmer v. Pennsylvania Co., 2 L. R. A. 252, it is said :· ''The failure of a railroad company to remove from the platform of a passenger car on a through train, before five o'clock a. m., while yet on the route, a thin covering of ice and snow which had accumulated during the night, will not constitute negligence such as will make it liable for an injury which a passenger sustained by slipping thereon, especially when he had several times crossed over the platform during the night and knew of its slippery condition.''

In Fearn v. Ferry Co., 143 Pa. St. 122, it was held

Vancleve v. Railroad.

that the ferry company was not liable for an injury caused by the slippery condition of the deck of its boat produced by snow and ice falling at the time - plaintiff slipped and fell, that in such circumstances the presumption of negligence, from the mere fact that the passenger was injured, did not apply.

If, as the foregoing authorities hold, a railroad carrier of passengers is not required to inspect every part of its train while en route and remove ice and snow therefrom that has accumulated after the train left the starting station, no good reason can be given for requiring it to inspect the steps of its cars and remove mud that had accumulated thereon from the feet of its passengers entering the cars at its stations along the route. In both instances the accumulations are made by agencies over which the company has no control. We think this is especially so when, as in this case, the evidence fails to prove or tend to prove that the employees of the company in charge of the train knew that the mud had accumulated on the step; and they were not bound to know it as they were not bound to keep up a continuous inspection en route. We think, under the evidence in the light of the foregoing authorities, plaintiff should have been nonsuited. The judgment is therefore reversed. *Reyburn, J.,* concurs. *Goode, J.,* dissents and thinks the cause should be remanded for retrial.