PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. ROSE.

[No. 5,679.   Filed January 31, 1907.   Rehearing denied May 17, 1907. Transfer denied June 27, 1907.]

1. PLEADING.—*Complaint.*—*Railroads.*—*Dangerous Exits.*—*Passengers.*—A complaint alleging that defendant railroad company negligently failed to discover and remove a banana peel lying on the step of its passenger-car, by reason of which the plaintiff, a pas-

Pittsburgh, etc., R. Co. *v.* Rose—40 Ind. App. 240.

senger, in alighting, stepped thereon and fell, to his injury, states a cause of action. *Malott* v. *Sample*, 164 Ind. 645, distinguished. p. 242.

2. TRIAL.—*Answers to Interrogatories.—Railroads.—Injuries to Passengers.—Dangerous Exits.*—Answers to interrogatories to the jury showing that plaintiff, a passenger, was injured by stepping on a banana peel on the step of defendant railroad company's car; that defendant cleaned such car after the morning run and before the afternoon run, but failed to show whether such peel was left on such step; that it was on such step on the prior run; that defendant's conductor and brakeman were busy with other work, and did not see it, and that it had remained on such step an unknown length of time, are not in necessary conflict with a general verdict for plaintiff. p. 244.

3. ·SAME. — *Interrogatories.* — *Verdict.* — *Inferences.* — The general verdict controls the answers to interrogatories to the jury, unless such interrogatories ·are in irreconcilable conflict therewith; and no inferences can be indulged in their favor. p. 246.

4. PLEADING.—*Complaint.—Evidence Admissible Under.—Railroads. —Dangerous Exits for Passengers.*—A complaint alleging that the defendant railroad company, by the exercise of ordinary care, could have discovered and removed a banana peel, upon which the plaintiff, a passenger, stepped and fell, is sufficient to admit as evidence the facts relating to the length of time such peel remained on the step, where it lay, and defendant's conduct in relation thereto. p. 250.

5. CARRIERS.—*Passengers.* — *Duty Toward.* — *Railroads.*—Common carriers are required to exercise the strictest vigilance and the utmost care and human foresight to guard their passengers from injury; and this duty applies from the beginning to the end of the journey. p. 250.

6. SAME.—*Passengers.—Duty Toward.—Railroads.*—Common carriers are not insurers of the safety of their passengers, but must exercise such strict care as is reasonably consistent with their business. p. 251.

7. SAME.—*Passengers.—Care.* — *Circumstances.* — *Dangers Caused by Third Parties.—Notice.*—The care required from carriers toward passengers must be commensurate with the consequences that may ensue from carelessness under the circumstances; but if injury results from the act of a third party, of which the carrier has no notice, the degree of care required is not so great, a reasonable time, in such case, being given to the carrier to ascertain and to remove the danger. p. 251.

8. RAILROADS.—*Passengers.—Dangerous Exits from Coaches.*—A railroad company is not liable for injuries to a passenger, caused

by his stepping upon a banana peel on the step of the coach from which he was alighting, such peel being thrown there by some third party, without the knowledge of the company, and which had lain there only a short time. p. 254.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by Peleg M. Rose against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $3,000, defendant appeals. *Reversed.*

*M. Z. Stannard* and *Ward H. Watson,* for appellant.
*George H. Voigt,* for appellee.

RABB, J.—The appellee sued appellant in the court below to recover damages for a personal injury alleged to have been caused by the negligent acts and omissions of the appellant. The complaint was in one paragraph, and appellant's demurrer addressed to it for want of facts was overruled by the court below, and proper exception reserved. Appellant answered the general denial. The cause was submitted to a jury for trial, and a general verdict returned in favor of the appellee, together with answers to interrogatories submitted by the court to the jury at appellant's request. Motion was made in the court below by the appellant for a judgment in its favor on the answers to the interrogatories. This motion was overruled by the court, and proper exception reserved. Appellant's motion for a new trial was overruled by the court, and proper exception reserved. Judgment in appellee's favor was rendered on the verdict of the jury. These rulings of the court below are assigned as error here, and will be considered in the order in which they are made.

The substantial averments of the complaint were that the appellant was a common carrier of passengers; that it operated a line of railroad connecting the cities of Jeffersonville and New Albany, Indiana, and Louisville, Kentucky, and intermediate points; that appellee took passage in the appellant's passenger-train at appellant's sta-

tion in the city of Louisville, bound for the city of Jeffersonville; that to reach his destination it was necessary to change
cars at a point called the Junction, on appellant's road,
where one branch of the road deflected from the main line
to the city of Jeffersonville, the main line proceeding to the
city of New Albany; that in alighting from said train the
appellee stepped upon a banana peel lying on the second step
of the car from which he was alighting, was thereby caused
to slip and fall from said car, and was injured; that he was
without fault or negligence contributing to his injury, and
that the banana peel rendered said step dangerous to passengers using the same; that the banana peel had been permitted to remain on said step for more than an hour, and
was there long before the appellant's train left its station
at Louisville; that, by the exercise of ordinary care, the
appellant could have known of the danger in permitting the
banana peel to remain on the step of the car, and, by the
exercise of reasonable diligence on its part, could have discovered and removed the dangerous object before the accident and injury to the appellee.

The averments in the complaint, showing the length of time
the banana peel remained upon the step of the car, and that
it was there long before the train left the terminal station
in Louisville, aided by the averment that the defendant
might, by the exercise of ordinary care, have discovered the
banana peel and its dangerous tendency to the traveling public and removed it, we think make the complaint sufficient to
withstand the appellant's demurrer.

There is a very marked distinction between the case at bar
and the case of *Malott* v. *Sample* (1905), 164 Ind. 645, cited
by appellant's counsel. In that case the complaint failed to
state the length of time the defect in the stirrup, the giving
way of which caused the accident, had existed before the
happening of the accident, and there was no direct averment
that the defect had existed such a length of time that
the defendant might, by the exercise of reasonable care, have

repaired the stirrup. Because this fact appeared by way of recital, the Supreme Court held that the complaint was bad. In this complaint it appears from positive averment that the dangerous banana peel remained on the car step for some three-quarters of an hour before the train left the Louisville station, and there is a distinct and positive averment that it so remained on the car step a sufficient length of time for the defendant, by the exercise of ordinary vigilance, not only to discover it, but to remove it. We think these allegations sufficiently distinguish the case at bar from the case cited, that these distinguishing features cover the objection raised to the complaint in that case, and that the appellant's demurrer to the complaint was properly overruled by the court below.

The second error complained of by the appellant is the action of the court in overruling its motion for a judgment in its favor on the answers to interrogatories. The answers to interrogatories, sixty-seven in number, show that the plaintiff took passage at Louisville for a point on defendant's road that required him to change cars at a place called the Junction, which was between five and ten minutes' ride from Louisville; that the car in which plaintiff was riding had been placed on defendant's side-track No. 4 shortly before 5 o'clock p. m. on the day that plaintiff was hurt, so as to be ready for the 5 o'clock p. m. run from Louisville to New Albany; that before it was so placed on said side-track it was cleaned and inspected by the servants of the company; that there was at that time no banana peel on the steps; that the car was used in making the 5 o'clock run to New Albany from Louisville, and in making the 5:30 o'clock run from New Albany to Louisville, and in making the 6 o'clock run from Louisville to New Albany; that two passengers on the same train with plaintiff first saw the banana peel lying on the car step two minutes before the train started out from Louisville for the 6 o'clock run; that the banana peel was not placed on the car steps by any ser-

vant of the company, and that none of the company's servants knew of its presence there; that there were about three hundred passengers on the train at the time, and the train was composed of five or six coaches; that it took the trains from twenty to twenty-five minutes to make each run between Louisville and New Albany; that, when the train arrived at Louisville from the 5:30 o'clock run from New Albany, it remained at Louisville about five minutes before starting on the return trip to New Albany; that while the train stood at Louisville, after making the 5:30 o'clock run from New Albany, the brakeman had to announce the stations on certain cars, make couplings, adjust air-brakes, throw switches, and assist passengers to alight from and board the train; that the conductor had to announce stations in certain cars, assist passengers to alight from and board the trains, and give signals; that the plaintiff alighted from the defendant's car at the Junction, and in alighting stepped on a banana peel lying on the second step of the car in which he was riding, and at the time the banana peel had been on the car step for an unknown length of time.

The interrogatories find that the car in which the plaintiff rode was cleaned after it was taken out of the morning run and before it was put on the afternoon run. That there was a morning run is to be known only by inference. There is no express finding that there was a morning run or an evening run of cars on this road, and no finding when the morning run ceased. So far as anything to the contrary appears in the answers to interrogatories, the morning run may have ceased the first hour after midnight, and the cars may have been then cleaned. There is a finding that before the car was placed on defendant's side-track No. 4—and where side-track No. 4 is located is not disclosed by the answers to interrogatories—it was inspected by the defendant's car inspector, and there was no banana peel on the car steps at that time, but what length of time elapsed between the inspection and the placing of the car on the side-track is no-

where disclosed by the answers to interrogatories. Whether it was immediately before, or the day before, or the week, or the month, or the year before, is left in doubt and uncertainty. For anything appearing in the answers to the interrogatories the banana peel may have been on the car steps a week before the accident. It is true there is a finding that sometime in the morning of the day on which the accident happened, the time not definitely given, the car and steps were cleaned by the servants of the company, but it is not stated whether they saw and removed the banana peel. It is found that when the inspection was made the banana peel was not present on the steps, but, as before shown, the time of the inspection is utterly indefinite, except that it was before putting the car on track No. 4 at 5 o'clock p. m. of February 9.

To entitle the defendant to a judgment in its favor on the answers to interrogatories, against the verdict of the jury, there must be an irreconcilable conflict between the answers to the interrogatories and the general verdict.

3. The answers to the interrogatories can in nowise be aided by a reference to the evidence. They must affirmatively show the defendant entitled to a judgment. All reasonable presumptions are indulged in favor of the general verdict. *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583, and cases cited. This is a general principle well recognized, and will not be questioned.

In this case it will be presumed, in support of the general verdict, that the inspection of defendant's car found, by the jury to have been made, was so made an unreasonable length of time before the car was put in service, and that had such inspection been made a reasonable length of time before putting the car in service the banana peel would have been discovered and removed. We therefore conclude that the appellant's motion for judgment upon the answers to interrogatories was properly overruled.

The serious questions presented on this appeal arise on appellant's motion for a new trial. The reasons set forth in the motion for a new trial, that are urged here for a reversal of the cause, are: (1) That the verdict of the jury is not sustained by sufficient evidence; (2) that the court erred in permitting a medical witness to testify, after describing plaintiff's condition, to results that might possibly follow from his injury, or that could follow from his injury; (3) objection to certain instructions given by the court at the appellee's request, in reference to the degree of care required of the appellant, and with reference to the measure of damages, and refusing certain instructions tendered by the appellant.

There is no substantial conflict in the evidence in this case. It shows that the appellant is engaged as a common carrier of passengers, operating a line of railway connecting the cities of Jeffersonville and New Albany, in Indiana, and Louisville, in Kentucky, and intermediate points; that trains were regularly run from the defendant's terminal stations in these cities every half hour, and that it took between twenty and twenty-five minutes to make the trip between the terminal stations; that there was a junction of the defendant's roads near Clarksville, one branch leading to Jeffersonville, the main line proceeding to New Albany; and that defendant's passengers from Louisville for Jeffersonville changed cars at this junction, while the train made up at Louisville proceeded on to New Albany; that defendant's trains were in service all day between Louisville and New Albany, generally changing engines at Louisville at the end of every round trip; that there were five intermediate stations on defendant's line between Louisville and New Albany where regular stops were made, and two flag-stations where stops were made on the evening runs; that the traffic on the line was very much heavier in the morning and evening than during the day; that on the 6 o'clock a. m. run there were five or six coaches in the train at Louisville;

that after that run was made all but two of the coaches were returned to the defendant's yards in Louisville, and were there cleaned and inspected, and remained in appellant's yards until about 4:30 o'clock p. m., when one or two would be taken out and added to the train, and on each run thereafter other cars would be added until 6 o'clock, when there would be from five to seven coaches in the train; that the train was in charge of a conductor, who had the assistance of one brakeman in its management; that the train remained at the terminal point from five to ten minutes; that the particular car under consideration in this case was put into the train at 5 o'clock p. m. on the day appellee was injured; that it had been cleaned by the company's servants sometime during the day, that it was inspected after being cleaned, was in good repair, and there was no banana peel on the steps of the car when it left the company's yards about 4:30 o'clock p. m.; that at the time it was placed in the train the brakeman passed along on the outside of the car to examine the platforms and couplings, and detected no banana peel on the step; that the car made the run in the train to New Albany, starting at 5 o'clock, and returning to Louisville a few minutes before 6 o'clock; that it remained at the station at New Albany about ten minutes; that two additional cars were put in the train for the 6 o'clock run, and that, a few minutes before it started, two passengers observed a piece of banana peel lying on the second step at the rear end of the third car in the train; that plaintiff purchased a ticket and took passage on the train from Louisville for Jeffersonville; that when he boarded the train he passed up the identical steps on which the banana peel was observed by the two passengers, but whether before or after the peel was observed by them can only be determined by inference; that neither the conductor nor the brakeman made any special examination of the car steps while the train was at Louisville, just before it left on the 6 o'clock run, nor was any examination made by them of the car steps at New

Albany; that there was a good light at the depot at Louisville; that while at Louisville the brakeman and conductor had a multiplicity of duties to perform that kept them fully occupied from the time the train arrived from New Albany until it departed on the 6 o'clock run, and that their duties while *en route* occupied their entire time and attention; that the junction at which the appellee alighted from the train was the first stop out from Louisville; that when it was reached the appellee, in alighting from the train, stepped on the banana peel in question, slipped and fell, and was injured; that there were about three hundred passengers on the train; that neither the plaintiff nor any of the servants of the company had anything to do with putting the banana peel on the car steps, or any knowledge of its presence there until after the accident happened; that the light at the Junction was not very good; that appellee, in leaving the car and descending the steps did not look for anything on the steps, but took hold of the hand-rail, which was in good condition, and that he used the same care or caution that ordinarily prudent men exercise in like situations; that defendant was an able-bodied man, about fifty-five years of age, and that his eyesight was slightly impaired; that the appellant's car, platform and steps were in nowise defective, and that the sole cause of the accident was the banana peel lying upon the car steps. These facts are established by the evidence without conflict, and if they are sufficient to entitle the appellee to a recovery the verdict must be sustained; if not it must be set aside.

It is contended by appellee, in support of the verdict, that the rule of law governing the obligation of the appellant toward the appellee required of appellant the exercise of the utmost possible vigilance. All that human skill and foresight could do to protect him from accident and permit him to alight safely from its cars, is claimed by the appellee to have been owing him from the appellant. If human wisdom, vigilance and foresight could have protected him from

the peril which he encountered, and which resulted in his fall and injury, then the appellant is liable. If this be the true rule that governs the rights of the parties in this case there can be but little question that appellee's contention is correct. It is not, however, the theory upon which the complaint is based. The complaint simply charges the

4.  defendant with the want of ordinary or reasonable care, and that, by the exercise of ordinary care, it could have known the dangerous character of the banana peel, and, by the exercise of reasonable diligence, it might have discovered and removed the same from the car steps. But, however, the facts proved were all clearly admissible under the issues formed, and, whatever may have been the theory of the complaint, if the facts are sufficient to entitle the plaintiff to recovery the verdict must stand.

The rule governing the duty of railway companies and other corporations and persons as common carriers of passengers has been variously expressed by text-writers,

5.  and by the multitude of decisions of the courts of last resort in cases decided growing out of the alleged negligence of the carrier resulting in injury to the passenger. The common form of expression is that carriers are held to the strictest vigilance and utmost care and all that human foresight could do to guard passengers from injury, and that they are held responsible for the slightest neglect resulting in injury to their passengers.

In a great many of the decisions is to be found the declaration that this strict rule applies from the moment the passenger enters the car until he is safely set down at the end of his journey. *Ft. Wayne Traction Co.* v. *Morvilius* (1903), 31 Ind. App. 464; *Louisville, etc., Ferry Co.* v. *Nolan* (1893), 135 Ind. 61; *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Jeffersonville R. Co.* v. *Hendricks* (1866), 26 Ind. 228; *Evansville, etc., R. Co.* v. *Athon* (1893), 6 Ind. App. 295, 51 Am. St. 303; *Cincinnati, etc., R. Co.* v. *Worthington* (1903), 30 Ind. App. 663, 96 Am. St.

355. A multitude of other cases from our own state courts and others might be cited to the same effect.

By these general expressions contained in the decisions it is not meant nor intended that the carrier is an insurer of the life and safety of a passenger. They do not mean

6. that the carrier will exercise all the care and all the diligence the human mind can conceive, or all the skill and all the ingenuity of which it is capable, to avoid accident; but that it shall exercise the utmost care that can reasonably be expected under the circumstances. Everything necessary to the security of the passenger, reasonably consistent with the business of the carrier, must be done. *Indianapolis, etc., R. Co.* v. *Horst* (1876), 93 U. S. 291, 23 L. Ed. 898; *Tuller* v. *Talbott* (1860), 23 Ill. (orig. ed.) 357, 76 Am. Dec. 695; *Pittsburgh, etc., R. Co.* v. *Thompson* (1870), 56 Ill. 138; *Dunn* v. *Grand Trunk R. Co.* (1870), 58 Me. 187, 4 Am. Rep. 267.

Nor is the same unvarying degree of vigilance required under all circumstances and at all stages of the journey. It

7. is perfectly manifest that what might be gross carelessness under some circumstances and at some stages of the journey, would be due care under other circumstances and at other stages. For instance, if there was a piece of new road, where the roadbed was not secure, where the ties were not well ballasted, or where the bridges had not been thoroughly tested, running at a high rate of speed over such places would involve great danger to the occupants of the train, and be gross carelessness on the part of the servants of the company, while the same rate of speed might be maintained over other parts of the road, where the roadbed and the bridges were safe, secure, and thoroughly tested, with comparative safety, and where it would not only be due care on the part of the servants of the company so to speed the train, but where such speed would be expected of them by the traveling public. And how could it be contended, with any kind of logic, that the carrier was bound

to exercise the same strict vigilance, the same high degree of care and foresight in assisting a passenger to enter and alight from its train standing perfectly still, at a safe and convenient depot platform, that would be required of it while the passenger was sitting resignedly and helplessly in his seat in the coach, and the train being hurled through the country by its mighty locomotive at a high rate of speed, where the slightest mistake of those in charge of the running of the train or the maintenance of the way would be followed by the direst consequences. The mere statement of the proposition is conclusive that, notwithstanding the general statement in the books, the courts do not mean to hold the carrier to the same degree of care under all circumstances. See, *Philadelphia, etc., R. Co.* v. *Derby* (1852), 14 How. *468, 14 L. Ed. 502; *Hegeman* v. *Western R. Corp.* (1855), 13 N. Y. 9, 64 Am. Dec. 517.

There is no iron-bound, hard and fast rule that can be applied under all circumstances governing the duties and obligations of common carriers of passengers. No rule of law is more elastic. There is none in which the circumstances in each case must so largely furnish the measure of duty. There is, however, one fixed, universal principle that runs through the entire doctrine of negligence, and sheds a certain and steady light by which we can be safely guided in each particular case in fixing the measure of duty of all parties concerned. It is this: The vigilance and care required of all persons to be affected in each case must be proportionate to the dangers to be apprehended, not only to the probability or possibility of accident, but to the gravity of the results of the accident. The rule is well expressed in the syllabus to the case of *Indianapolis, etc., R. Co.* v. *Horst, supra,* thus: "The standard of duty * * * should be according to the consequences that may ensue from carelessness." An examination of the cases will disclose the fact that this is really the rule that has been invariably applied to the facts in every case. In all cases where an injury

is sustained by a passenger while in transit, or through any defect in the appliances or operative mechanism of the means of transportation, or to any action of its servants, the carrier is held to the strictest account, but if the injury results through the carelessness of a third person, in noway connected with the carrier, or from the elements, for whose act the carrier can only be bound after notice, then a very different measure of duty prevails. See *Hayes* v. *Forty-Second St., etc., R. Co.* (1884), 97 N. Y. 259; *Lafflin* v. *Buffalo, etc., R. Co.* (1887), 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; *Kelly* v. *New York, etc., R. Co.* (1888), 109 N. Y. 44, 15 N. E. 879; *Palmer* v. *Pennsylvania Co.* (1888), 111 N. Y. 488, 18 N. E. 859, 2 L. R. A. 252; *Kelly* v. *Manhattan R. Co.* (1889), 112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74; *Palmer* v. *President, etc.* (1890), 120 N. Y. 170, 24 N. E. 302, 17 Am. St. 629, 44 Am. & Eng. R. Cas. 298; *Pittsburgh, etc., R. Co.* v. *Aldridge* (1901), 27 Ind. App. 498; *Neslie* v. *Second, etc., R. Co.* (1886), 113 Pa. St. 300, 6 Atl. 72; *Stimson* v. *Milwaukee, etc., R. Co.* (1890), 75 Wis. 381, 44 N. W. 748; *Stierle* v. *Union R. Co.* (1898), 156 N. Y. 73, 50 N. E. 419; *Morris* v. *New York, etc., R. Co.* (1887), 106 N. Y. 678, 13 N. E. 455; *Proud* v. *Philadelphia, etc., R. Co.* (1900), 64 N. J. L. 702, 46 Atl. 710, 50 L. R. A. 468; *Barnes* v. *New York, etc., R. Co.* (1904), 87 N. Y. Supp. 608; *Vancleve* v. *St. Louis, etc., R. Co.* (1904), 107 Mo. App. 96, 80 S. W. 706.

The rule to be deduced from the cases, applying where the injury has been caused by the elements, as snow or ice falling or freezing on the platform or the steps of the car, or from things which a passenger might lawfully bring into the car, or which some unauthorized person, not connected with the carrier, has deposited in the car, or on the steps or platform of the car, or the approaches to the car, is that before the carrier can be held liable it must know of, or have reasonable time and opportunity to discover and remove the object causing the injury. Snow fallen or ice

formed upon the platform and steps of the car, or mud deposited upon the steps by incoming passengers, while the train is *en route,* is not such an object as renders the carrier liable for injuries sustained by passengers caused thereby to slip and fall, though it would be within the bounds of human foresight and endeavor to sand the steps and platform at each stop before taking on or discharging passengers.     The carrier is not held to such a strict responsibility in guarding against perils of this character. *Palmer* v. *President, etc., supra; Vancleve* v. *St. Louis, etc., R. Co., supra.*     It has been held that, where a passenger stumbles over a valise left in the aisle by a fellow passenger, the carrier is not bound to anticipate such peril, and is not bound to keep a servant in each car, and that it can be held liable for injury resulting from such cause only after it has had a reasonable opportunity to discover and remove the dangerous obstacle.

In this case there is no room to doubt that appellee's injury was caused by the unauthorized act of some passenger on appellant's train, or by some stranger, and not by any servant of the company, and that, as a matter of fact, no servant of the company knew of the presence of the banana peel prior to the accident. The company can be chargeable for appellee's injury only on the theory that, in the exercise of proper diligence, it should have discovered the presence and dangerous character of the banana peel and removed it from the step. The danger to be apprehended from this cause was certainly not a peril reasonably to be expected.     The banana peel was evidently dropped on the step of the car by some one immediately before the train left the station.     The evidence shows that any one, by observing the step, could have seen the banana peel.     It also shows that appellee and his witness, Mahoney, got on the car at the Louisville station about four or five minutes before the train started, and

that they went up the same steps appellee came down when he fell.   Neither of them saw the banana peel on the step as they went into the car, nor did any one else, so far as the evidence discloses, except the two passengers who testified. The inference is irresistible that they passed by the step and discovered the peel after appellee and Mahoney. had boarded the train, and that it was left there between the time Mahoney and appellee boarded the train and the two witnesses discovered it.   If the peel had been on the step when appellee boarded the car it would have been as much his duty to take note of it as it was the duty of the servants of the company; but, as before stated, it is to be presumed that it was not there at that time.   The evidence further shows that the time of the brakeman and conductor of the train was completely occupied by their duties in making up the trains, helping the passengers on board, and taking up tickets, from the time the peel could have been dropped on the step until the appellee met with the accident.   It would be unreasonable to hold that the carrier was bound to anticipate such an unusual and unexpected cause of peril. It was not a danger reasonably to be apprehended; not such a one as would require the unremitting vigilance of the carrier to guard its passengers against.   Successfully to have guarded against an accident of this kind, the company would be compelled to keep a servant at the steps of every car during all the time it was receiving and discharging passengers.   No such degree of vigilance is required of a carrier to guard against a peril of this character.   *Palmer* v. *President, etc., supra; Pittsburgh, etc., R. Co.* v. *Aldridge, supra; Stimson* v. *Milwaukee, etc., R. Co., supra; Vancleve* v. *St. Louis, etc., R. Co., supra; Young* v. *Missouri Pac. R. Co.* (1905), 113 Mo. App. 636, 88 S. W. 767; *Chicago, etc., R. Co.* v. *Murphy* (1900), 99 Ill. App. 126. We think, for the reasons stated, that the evidence was not sufficient to sustain the verdict of the jury.

Certain other questions are presented by the record in this case, but as they probably will not arise upon another trial of the cause we deem it unnecessary to consider them.

Cause reversed, with instructions to the court below to grant a new trial.

All concur except Watson, J., not participating.