Peter B. Betras, Youngstown, for appellee. Harrington, Huxley & Smith, Youngstown, for appellant.

**JONES v**
**YOUNGSTOWN MUNICIPAL RY CO**

Ohio Appeals, 7th Dist, Mahoning Co

No 2368.  Decided April 2, 1937

**OPINION**

By ROBERTS, J.

This cause is in this court on an appeal of law from the Court of Common Pleas, wherein Lena Jones, the appellee, was plaintiff, and the Youngstown Municipal Railway Company, appellant, was defendant. The parties will hereinafter be alluded to as plaintiff and defendant in like manner as in the lower court.

The plaintiff, a young colored woman, 21 years of age, boarded one of the defendant's busses at a regular stop in front of the Central Tower Building on West Federal Street in the city of Youngstown, about noon on the 26th day of July, 1934. This bus proceeded easterly across the Central Square and along East Federal Street to Basin Street, where the bus stopped, and which street was the destination of the plaintiff. She attempted to alight from the bus when she fell in the aisle and was assisted to a seat by the operator of the bus, who discovered upon and removed from the sole of her shoe a piece of banana peel. The plaintiff claims that she received severe injuries as a result of this

fall, which she claims was because of the negligence of the defendant, and brought this action seeking to recover damages. The trial resulted in a verdict in favor of the plaintiff in the sum of $800.00. Judgment was entered upon the verdict and the defendant has prosecuted its appeal to this court. The issue has been submitted upon briefs and oral arguments and is now for determination.

Four propositions of alleged error are urged by counsel for the defendant, as follows:

1. The trial court erred in failing to direct a verdict upon motion of defendant at the close of plaintiff's evidence, and again at the close of all the evidence.

2. The trial court erred in refusing to charge the jury before argument as requested by defendant in the written request number four.

3. The trial court erred in charging upon the question of damages.

4. The trial court erred in refusing to charge the jury upon the law of constructive notice as requested by counsel for defendant at the conclusion of the general charge.

Going now a little more fully into the evidence for a better consideration of the matters concerning which complaint is made, it is stated that the line over which this bus was operated is known as the Hillman-Albert line, the termini of which are as follows: On the south side of the city on the corner of Overland and Cohasset Streets, and the northerly end of the line is at the corner of Albert Street and Hubbard Road. It is the contention of the plaintiff that on the day in question there was some sort of a celebration for children at Idora Park, and that on the trip of the bus upon which the plaintiff was riding a considerable number of children were riding on the bus after having visited this park; that they were eating bananas while in the bus, and later engaged in throwing banana peels in the bus and at each other. The scheduled time of the bus from its starting point in the southerly end of the city to Basin Street was about twelve minutes, during which time frequent stops were made and numerous people entered and alighted from the bus,- so that it is claimed that the time and attention of the bus driver was quite fully occupied with his duties in this regard, and he being required to maintain his seat at the door when passengers were entering or leaving.

Raymond C. Thornton, the bus driver, denies that previous to the falling of the plaintiff he had any knowledge whatever of any banana peels being thrown about or in the bus. There was a mirror over his head by which he could see out of the rear window of the bus, and, as he says, see the heads or perhaps the upper part of the bodies of passengers seated, but that he could not see the floor while so seated. He made no inspection of the bus or its condition during this trip. Two witnesses testified for the plaintiff, colored men named Thomas Richardson and Joseph Clayton. Their testimony was to the effect that children were playing during the trip with banana skins; that it started at the hospital at Oak Hill Avenue and continued to or near to the stop of the bus in front of the Central Tower, where the plaintiff took passage. Richardson testified:

"Q. As these children were playing with these banana peelings, was there anything said to the children by you?

A. I spoke up about the kids, they commenced to throw banana peelings at one another.

Q. How close were you sitting to the bus driver?

A. I was about middle ways, you understand, in my seat.

Q. Did you speak to the boys in a tone of voice that could have been heard by the bus driver.

A. Yes, sir.

Q. Following that fact, what, if anything, did the bus driver do?

A. Nothing but just look around.

Q. Looked around in the bus?

A. Yes, sir.

Q. To the rear of him?

A. Yes, sir."

The witness Clayton gave similar testimony, and upon inquiry as to whether the bus driver said anything when he was helping the plaintiff up from the aisle, where she had fallen, and was removing the banana peel from her shoes, the witness says:

"A. Yes, he made some remarks.

Q. Did you hear what the remark was?

A. Yes sir.

Q. Will you tell the jury what he said?

A. He said these damn kids been eating bananas and throwing them around."

The testimony of these two witnesses, who have been quoted only in part, is to

the effect that the children were throwing banana peels about the bus, and in one instance there is testimony that a peeling was thrown under the seat where the plaintiff was sitting and that another was in the aisle. This testimony further tends to indicate that the bus driver had or ought to have had knowledge of this conduct of the children, and with such knowledge it is claimed that it was his duty, representing his employer, to look for and remove banana peels from the floor, that being known by reason of their tendency to cause a person to slip when stepping upon them.

On the other hand, howevr, the bus driver denies any knowledge of the presence of banana peels; that he heard these witnesses, or either of them, reprove the children, and that there was anything to indicate danger or an unusual condition in the bus which might be hazardous to the plaintiff as a passenger.

Referring now to the first of the four alleged grounds of error, which reads as follows: "The trial court erred in refusing to direct a verdict in favor of the defendant at the close of plaintiff's evidence and again at the close of all the evidence," it is thought that little need be said upon this proposition. Some reference has already been made to the evidence in the case. There was the evidence of the witnesses Clayton and Richardson, which is to the effect that banana peels were being thrown about the bus by children, and that by reason of the circumstances and the opportunity which the bus driver had, as claimed, to hear the reproof of one of them say to the children for so conducting themselves, there is evidence tending to prove that the bus driver had opportunity to know about this condition and this conduct of the children, and a question of fact developed for determination by the jury under proper instructions by the court as to whether or not the driver's conduct constituted actionable negligence, as a result of which the plaintiff might have a right of action for such damages as she sustained. The court did not err in refusing to direct a verdict for the defendant.

Second, it is said that the trial court erred in refusing to charge the jury before argument as requested by the defendant. This was the fourth request of counsel for the defendant for instructions before argument, and reads as follows:

"Members of the jury I say to you as a matter of law that you can not charge the defendant with knowledge of the presence of the banana peel unless plaintiff proves by the greater weight of the evidence that defendant's driver actually knew of its presence or that the peel had been on the floor of defendant's bus for a long enough period of time that the operator should have, in the exercise of ordinary care, known of its presence and had a reasonable opportunity to remove it."

Counsel for defendant here suggest, quite correctly it is apprehended, that presumably the court refused the request because it required of the operator only the exercise of ordinary care to know of its presence. This raises an issue as to the duty of a common carrier of passengers regarding the degree of care required for their protection. In this connection the court stated to the jury as follows: (R. page 199)

"Now this is a negligence case and negligence in the average run of cases is usually determined as to the want of ordinary care, but the care required in carrier of passengers for hire is a different rule than that of ordinary care. A common carrier of passengers for hire such as the defendant company owes to a passenger the highest degree of skill and practicable care in the operation of its busses that may be reasonably expected of intelligent and prudent persons engaged in that business in view of the instrumentalities employed and the dangers naturally to be apprehended and that is reasonably consistent with the practical operation of the company's busses."

The court in the instruction then goes forward in further explanation of the difference between the degree of care required of common carriers of passengers and that which ordinarily is the rule in other relations. This rule given by the court is the rule, in substance and effect, which has been recognized as being the correct rule generally in text books and decisions. This is not denied by counsel for the defendant further than he claims that a different rule should have been given in this particular case, and cites but few authorities in support of his contention for an instruction of ordinary care, none of which are Ohio cases. The case most particularly claimed to be in point is that of Bascell v Hines, 269 Fed. 231, a case decided by the United States Circuit Court of Appeals for

the Sixth District, and in this case a passenger fell over a hassock or foot stool which had been placed in the aisle of the car by some third person. In this case the court said:

"It did not need evidence to show that these hassocks were under the control of the passengers, and were by them placed and replaced as they desired; and this destroys the basis—sole management and control—for the extreme rule. There is, in our judgment, no sound reason why anything more than ordinary care, fitted to the circumstances, should be required, nor why the rule of highest practicable care should be applied to such a subject; we do not find any controlling authority or any weight of authority which so requires."

The case of Pittsburgh Railway Company v Rose, 79 NE 1094, is cited, wherein the court said:

"In all cases where an injury is sustained by a passenger while in transit, or through any defect in the appliance or operative mechanism of the means of transportation, or to any action of its servants, the carrier is held to the strictest account, but if the injury results through the carelessness of a third person in no way connected with the carrier, for whose act the carrier can only be bound after notice, a very different measure of duty prevails."

The distinction is further elucidated substantially as follows, that the highest degree of practicable care, as given in the instant case, is required where the dangerous condition relates to the mechanism and operation of the vehicle itself, which if great care is not observed by reason of extreme speed may prove a source of great danger, and such a condition is distinguished by the misplacement of comparatively harmless articles in an aisle or some other place in the vehicle over which a passenger may fall, but presumably such condition is not a source of great or serious danger. It is apprehended, however, that even in these cases, where the use of a dangerous substance, such as a banana peel, may properly be recognized to be, is within the observation or knowledge of the person in charge of the vehicle, that then there is no reason for the modification of the rule as suggested by counsel for the defendant, and that the highest degree of care, the generally time-honored rule, requires.

This court has given this question considerable consideration, and except in this

Federal Court case no instance of the modified rule has been discovered by industry of counsel or of the court, and it is the opinion of this court that it is in duty bound to follow and recognize the well recognized rule of greatest practicable care, rather than this reasoning of the rule in innovation which has obtained but little recognition or support. As perhaps before suggested, the principal reason or excuse for the use of the rule claimed is that it involves conditions which the person in charge of the vehicle may not have opportunity to acquire knowledge concerning.

The cause of action of the plaintiff is based upon the alleged knowledge of the operator of the bus and not of a defective or dangerous condition unknown to the operator wherein liability would not develop until such length of time had intervened as to justify a presumption of knowledge.

The third complaint is that the court erred in charging the jury upon the question of damages. The injury complained of as being a result of the accident was a urinary disturbance and bladder trouble, claimed to have been caused by a displacement of the uterus as a result of the accident. It is contended that this would not be a usual or natural result. However, two doctors, James H. Wallace, and Samuel H. Bedwitz, testified for the plaintiff, and a perusal of their testimony and other testimony in the case relating to this subject matter does not indicate that the injury complained of could not be or was not caused as alleged.

Fourth, it is said that the court erred in refusing to charge the jury upon the law of constructive notice as requested by counsel for defendant at the conclusion of the general charge. Record, page 206, following the conclusion of the general charge, the court inquired "Anything further by counsel on either side? Mr. Betras: Nothing. Mr. Huxley: Your Honor, have you covered notice?" The court said:

"I might say that I have covered actual notice and constructive notice in the charge before argument, and I said that I would not change or vary, add to or subtract from the written charges before argument; therefore, I feel if I defined actual or constructive notice further that I would be perhaps adding to the written charge and therefore I do not care to go further upon that subject. Anything further?"

No response was made to this inquiry. No objection or exception appears to have been made to the charge. This, however, is not necessary. What is inquired about is evidently concerning what notice or constructive notice the operator of the bus had or ought to have had concerning the dangerous condition claimed by reason of the presence of banana peels upon the floor. This court does not consider this proposition very important, for the reason, as perhaps before suggested, that the plaintiff does not rely upon constructive notice, but her contention is founded upon the claim that the conditions involved after she became a passenger on the bus and before, regarding the throwing of banana peels by these children, were such that the operator of the bus knew, or, in the exercise of ordinary care, ought to have known of the dangerous condition.

Consideration has now been given to the various complaints of the defendant, with the result that no reversible error has been found, and the judgment of the Court of Common Pleas is therefore affirmed.

Judgment affirmed.

NICHOLS and CARTER, JJ, concur.