## Louisville & Nashville Railroad Company v. O'Brien.

(Decided March 16, 1915.)

### Appeal from Hart Circuit Court.

1. **Carriers—Injury to Passenger—When Carrier Not Liable.**—In all cases where an injury is sustained by a passenger while in transit, or through any defect in the appliances or operative mechanism of transportation, or by any acts of its servants, the carrier is held to the strictest account; but if the injury results through the carelessness of a third person in no way connected with the carrier, or from the elements, for whose act the carrier can only be bound after notice, a very different measure of duty prevails, and the carrier is not liable.

2. Carriers—Injury to Passenger—When Carrier Not Liable.—Where an injury to a passenger has been caused by the elements, as snow or ice falling or freezing upon the platform or steps of a car, or from things which a passenger might lawfully bring into the car, or which some unauthorized person not connected with the carrier has deposited in the car, or on the steps or platform of the car, or the approaches to the car, the carrier is not liable unless he knew of the presence of the object causing the injury, or had a reasonable time and opportunity to discover and remove it.

3. Carriers—Injury to Passenger—When Carrier Not Liable.—Where a passenger in alighting from a car stepped upon a banana peel upon the steps and was thrown from the car, the carrier was not liable for the injury to the passenger in the absence of any evidence as to when or by whom the peel was placed upon the steps, or that the carrier knew of its presence upon the steps, or had reasonable time and opportunity to discover its presence upon the steps and remove it.

4. Carriers.—A carrier is not bound to anticipate unusual and unexpected causes of peril.

WATKINS & CARDEN, SIMS & RODES and BENJAMIN D. WARFIELD for appellant.

H. L. JAMES and McCANDLESS & LARIMORE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Reversing.

This is an appeal from a judgment in favor of the appellee, Louis O'Brien, for $1,500.00 against the appellant, who was the defendant below, for personal injuries received by O'Brien in stepping or falling from one of appellant's moving trains.

The accident came about in this way: On October 6th, 1913, O'Brien boarded appellant's local passenger train at Gaither's Station, south of Elizabethtown, and paid his fare to Dividing Ridge, a flag station about 25 miles further south. The train reached Dividing Ridge at 7:48 o'clock P. M.

O'Brien and his companion, Thomas, rode in the "smoker," which was immediately in front of the ladies' car. As the train approached Dividing Ridge, the porter and flagman called out the station in the "smoker" and in the ladies' car. The flagman then took his station at the steps of the ladies' car, which was next to the "smoker," for the purpose of assisting passengers to alight from the train. The conductor took his

station at the other end of the "smoker," next to the baggage car, for the purpose of seeing that the baggage was properly unloaded.

Immediately after the station Dividing Ridge had been called out O'Brien and Thomas got up and started to leave the "smoker" by the rear door and platform next to the ladies' car. The train was still moving, and was about 100 yards from the station. O'Brien testified that as he started down the steps of the "smoker," and when he had reached the third step from the top, he stepped on a banana peel, and slipped off the train, feet foremost. Thomas was immediately behind O'Brien when he fell from the train, and after the train had stopped, Thomas went back and found him at a point about a hundred yards from the station, and sitting upon the ground in an unconscious condition. He, however, soon regained consciousness.

A physician was called, and O'Brien, accompanied by the physician, one of the railroad employes, and Thomas, walked to Gardner's residence, in the neighborhood, where he remained all night. The doctor dressed his bruises, and the next morning O'Brien rode in a buggy to the house of a friend, a few miles distant, where he remained some three or four days, and then returned to his home near Gaither's Station.

Although O'Brien was 63 years old, no bones were broken, and his injuries do not seem to have been serious or permanent.

After the accident O'Brien did not immediately claim that he had slipped on a banana peel, and he did not say anything about it to Gardner or to Mrs. Gardner, or to any one present, except to Dr. Craddock, who dressed his wounds. Dr. Craddock testified that either before or while he was dressing O'Brien's wounds, "he said he slipped on something between the cars, and he thought it was a banana peel." With this exception, O'Brien made no claim that he had slipped upon a banana peel, for quite a while after the accident.

Thomas, who was immediately behind O'Brien when he fell, did not see a banana peel, and says he could not tell whether O'Brien slipped off or fell off; and he further says he told the conductor or brakeman, he did not know which it was, that O'Brien had fallen off the train.

Starks, the flagman, who came to the end of the ladies' car next to the "smoker," and was standing there while the train remained at the station, did not see O'Brien fall from the steps, and knew nothing about it until a passenger coming out of the "smoker," presumably Thomas, told him a man had fallen off the train some distance down the track. Starks reported that fact to Parsons, the conductor, who then went through the train for the purpose of ascertaining whether any of his passengers were missing, but missed none. The train left Dividing Ridge without any of the trainmen having learned that O'Brien had fallen from the train; but at the next station the conductor telegraphed to the proper officer of the road, giving him the information he had received about a man falling from the train, and asking that an investigation be made. As a result of that telegram, one of the railroad employes at Dividing Ridge found O'Brien shortly after Thomas had reached him, and assisted him to the Gardner residence.

There is no evidence that any one saw a banana peel on the car step at any time, except the testimony of O'Brien, that he saw it just as he stepped on it.

There is no evidence that any one on the train ate a banana on that trip, or that a banana was sold on the train, or that any one had a banana on the train on that trip. The only testimony even tending to show there was a newsboy or "butcher" on the train, or that there were any bananas on the train, is that of O'Brien, who testified upon that subject as follows:

"Q. Did you see any bananas on that train? A. I didn't see the bananas on the train; only saw a fellow selling them, I suppose; he had them there in his basket. Q. Tell what you saw? A. They were sitting right there at the left-hand side of the door as we came out, on some kind of a basket or box with a lid on it. He had them in his basket. Q. Do you know who had those bananas? A. No, sir. Q. Do you know what they called him? A. He goes by the name of 'butcher boy.' I don't know what his other name is. Q. Did you see him on the train that night? A. Yes, sir; I seen him going through the train. Q. With anything? A. No, sir; he didn't have anything selling it, unless it was cigars. He didn't have any in his hand."

Upon the issue as to whether there was a "butcher boy" on the train O'Brien is contradicted by the three

members of the train crew, all of whom testified there was no "butcher boy" on the train on that trip. It was a local train, and there was very little or no necessity for a "butcher boy;" and the news company that owned the business of selling newspapers and edibles upon the train, only put an agent on these local trains occasionally.

But, giving O'Brien's evidence its fullest force, it does not show that any bananas were sold on the train, or that any one had bananas on the train.

Moreover, there was no evidence whatever as to when, where or by whom the banana peel was thrown or placed on the car step, or that defendant had any notice thereof, either actual or imputed.

Dividing Ridge Station was on the east side of the track; and Sonora, 14 miles north of Dividing Ridge, was the last train stop at which the station was on the east side of the track. At the two intervening stations between Sonora and Dividing Ridge, the station was on the west side of the track, and, of course, the passengers alighted and boarded the train from that side.

Under this evidence appellant insists that its motion for a peremptory instruction to find for the defendant should have been sustained; and, in support of that ground, it relies principally upon the case of Pittsburg, Cincinnati, Chicago & St. Louis Railroad Co. v. Rose, 40 Ind. App., 240, 79 N. E., 1094. That was also a case of a passenger falling from the car steps as a result of stepping upon a banana peel, and raised the precise questions here presented.

Rose was a passenger upon appellant's train from Louisville, Kentucky, to Jeffersonville, Indiana; and in making that trip he had to change cars at the "Junction," on the north side of the Ohio River, and take a different train to Jeffersonville. In leaving the train at the "Junction" he stepped on a banana peel, and was thereby caused to slip and fall from the train, to his injury. He recovered a judgment for $3,000.00, which was reversed by the Appellate Court of Indiana, in a well-considered opinion, which discussed the general duties of the carrier to the passenger, in a case of this character.

After calling attention to the general rule running through the entire doctrine of negligence, that the vigilance and care required of all persons to be affected in each case must be proportionate to the dangers to be

apprehended, not only to the probability or possibility of accident, but to the gravity of the results of the accident, the court said:

"In all cases where an injury is sustained by a passenger while in transit, or through any defect in the appliances or operative mechanism of the means of transportation, or to any action of its servants, the carrier is held to the strictest account; but if the injury results through the carelessness of a third person in no way connected with the carrier, or from the elements, for whose act the carrier can only be bound after notice, and then a very different measure of duty prevails. (Cases cited.)

"The rule to be deduced from the cases applying where the injury has been caused by the elements, as snow or ice falling or freezing on the platform or the steps of the car, or from things which a passenger might lawfully bring into the car, or which some unauthorized person not connected with the carrier has deposited in the car or on the steps or platform of the car, or the approaches to the car, is that, before the carrier can be held liable he must have known of or have had reasonable time and opportunity to discover and remove the object causing the injury. Snow or fallen ice formed upon the platform and steps of the car, or mud deposited upon the steps by incoming passengers while the train is en route, are not such objects as render the carrier liable for injuries sustained by passengers caused thereby to slip and fall, though it would be within the bounds of human foresight and endeavor to sand the steps and platform at each stop before taking on or letting off passengers. The carrier is not held to such a strict responsibility in guarding against perils of this character. Palmer v. Pennsylvania Co., *supra;* Van Cleave v. St. Louis R. R. C., *supra.*

"In this case there is no room to doubt but that the plaintiff's injury was caused by the unauthorized act of some passenger on defendant's train, or by some stranger, and not by any servant of the company, and that, as a matter of fact, no servant of the company did know of the presence of the banana peel prior to the accident. And the company can be chargeable for the plaintiff's injury only on the theory that, in the exercise of proper diligence, it should have discovered the presence and dangerous character of the banana peel and re-

moved it from the step. The danger to be apprehended from this cause was certainly not a peril reasonably to be expected. It was very evidently dropped on the step of the car by some one immediately before the train left the station.

"It would be unreasonable to hold that the carrier was bound to anticipate such an unusual and unexpected cause of peril. It was not a danger reasonably to be apprehended; not such a one as would require the unremitting vigilance of the carrier to guard his passengers against. To have successfully guarded against an accident of this kind the company would be compelled to keep a servant at the steps of every car during all the time they were receiving and discharging passengers. No such degree of vigilance is required of a carrier to guard against a peril of this character. Palmer v. Penn. Co., *supra;* Pittsburg, etc. R. Co. v. Aldridge, *supra;* Stimson v. Milwaukee, etc., *supra;* Van Cleave v. St. Louis, etc. R. Co., *supra;* Young v. Mo. Pac. Co., 113 Mo. App., 636, 88 S. W., 767; Chicago, etc. v. Murphy, 99 Ill. App., 126.

"We think, for the reason stated, that the evidence was not sufficient to sustain the verdict of the jury."

Conceding that it is the duty of a railroad company to inspect its trains, it is not bound to keep up a continuous inspection, or to know at each moment the condition of every part of the train.

Thus, in Proud v. Philadelphia, &c., R. R. Co., 64 N. J. L., 702, 50 L. R. A., 469, it was held that a failure of a railroad company to discover filth on the steps of a passenger car in the night time, within half an hour after the car had been inspected and found to be in good condition, did not render the company liable to a passenger who was injured by slipping on the step, where the proof failed to show that due care would have prevented the accident.

A carrier is not bound to anticipate unusual and unexpected causes of peril.

In Hotenbrink v. Boston Elevated Railway Co., 211 Mass., 77, 39 L. R. A. (N. S.), 419, a street car company was held not liable for injury to a passenger who fell from the step of a car, which was slippery because of tobacco juice which had been expectorated thereon, there being nothing to show that it had been there any length of time, and it was not shown that the conductor

had been negligent in failing to discover it before the accident happened.

That case was like the case at bar in many respects, as will be seen from the following excerpt from the opinion:

"There is no evidence that the conductor knew the saliva was there. No witness in the case, with the exception of the plaintiff and the child Clausina Bookhaut, testified that the alleged condition existed even at the time of the accident; and no witness testified to its existence before the plaintiff alighted. The momentary presence of such a substance on the step would not render the defendant liable. Goddard v. Boston & M. R. Co., 179 Mass., 52, 60 N. E., 486; Lyons v. Boston Elev. R. Co., 204 Mass., 227, 90 N. E., 419. There was nothing in its appearance from which the inference could be drawn that it had been upon the step for a considerable period of time. Anjou v. Boston Elev. R. Co., 208 Mass., 273, 94 N. E., 396, 21 Ann. Cas., 1143. The inference that it must have been there for two minutes, or since the preceding stop at H or I Street, is merely conjectural, for it might have come from some passing teamster or pedestrian or otherwise."

Since it has not been shown that any of. the appellant's servants knew of the presence of the banana peel upon the steps, or that it had been there such a length of time before the accident happened as would impute notice to them, we are of opinion the peremptory instruction asked by the appellant should have been given.

The cases of L. & N. R. R. Co. v. Ritter's Admr., 85 Ky., 368; L. & N. R. R. Co. v. Cockrell, 17 Ky. L. R., 1037, 33 S. W., 407; Beiser v. C., N. O. & T. P. R. R. Co., 152 Ky., 522; and Louisville & Interurban R. R. Co. v. Rommele, 152 Ky., 719, relied upon by the appellee to sustain the verdict of the circuit court, are not in point, and in no way contravene the rule of law herein announced.

For the error indicated, and without passing upon the other questions raised by the appellant, or the correctness of the instructions given, the judgment is reversed, with directions to peremptorily instruct the jury to find for the defendant upon another trial, if the evidence should be substantially the same as it was upon the first trial.