# Fern *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Carriers—Passenger — Passenger leaving train—Presumption of negligence—Case for jury.*

1. A presumption of negligence arises from an accident to a passenger when it is caused by a defect in the road, cars or machinery, or by want of diligence or care in those employed, or by any other thing which the company can and ought to control as a part of its duty to carry passengers safely.

2. It is the duty of a carrier· not only to furnish safe appliances and means for the exit of passengers at their destination, but also at other points on the line of the road where they desire to leave the car. Any disarrangement or displacement of the car platform which results in injury to a passenger when alighting is presumptive evidence of negligence on the part of the carrier. .

3. A passenger has the right to alight from either end of a railroad car and has the right to assume that there is a safe means of egress from both ends, and can be convicted of negligence only when he attempts to make his exit after he discovers, or by the exercise of proper care should have discovered, that the place is unsafe.

4. In an action against a railroad company for injuries sustained by a passenger, it appeared that while the train was stopping at a station, plaintiff attempted to leave the end of the car which was next to the baggage car by a door which apparently had been left open by a trainman; that he put his hand against the railing or side of the vestibule and moved his foot forward to what he supposed was the offset leading to the first step, but that the trapdoor covering the steps had not been raised, whereby plaintiff fell, suffering the injuries complained of; there was evidence that there was no light in the vestibule, that the trapdoor could not be seen because of the darkness and that plaintiff's eyes were blinded by the arc lights from the station platform. *Held,* that the door which plaintiff had used to leave the train was a proper means of exit, that he was justified in assuming that the trapdoor was up in view of the fact that the train was at a regular dining station, and a verdict and judgment for plaintiff was sustained.

*Practice, C. P.—Charge to jury—Inadequacy—Waiver of objections—Points for charge—Refusal.*

5. The· inadequacy of the charge of the court cannot be regarded as reversible error, where it appears that in reply to the court's inquiry whether any further instructions were desired, counsel expressed themselves as fully satisfied with the charge.

6. A point for charge which assumes the existence of a fact which is disputed is properly refused.

Mr. Justice MOSCHZISKER dissents.

Argued May 12, 1915. Appeal, No. 160, Jan. T., 1915, by defendant, from judgment of C. P. Northumberland Co., December T., 1913, No. 316, on verdict for plaintiff in case of Thomas J. Fern v. The Pennsylvania

Railroad Company.   Before Brown, C. J., Mestrezat, Elkin, Moschzisker and Frazer, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before Cummings, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $4,734.50 and judgment thereon.   Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment n. o. v.

*J. Simpson Kline,* with him *George B. Reimensnyder,* for appellant.

*L. S. Walter,* with him *F. H. Strouss,* for appellee.

Opinion by Mr. Justice Mestrezat, July 3, 1915:

This is an action by a passenger to recover damages for injuries which he alleges he sustained by reason of the negligence of the defendant carrier.   The negligence alleged is permitting the front vestibule platform of the car on which the plaintiff was riding to be in an improper and unsafe condition for egress from the car by passengers which resulted in the plaintiff's injuries. The defendant denies that the evidence disclosed any negligence on its part, and alleges that the plaintiff's injuries resulted from his own negligence.   The facts may be summarized as follows: The plaintiff, a resident of Mt. Carmel, Pennsylvania, was returning home on March 4, 1913, from a trip to the western part of the State, where he had attended the funeral of a relative.   He entered the smoking car of one of defendant's trains at Johnstown, Pa., about 9:11 p. m. to go to Sunbury, Pennsylvania.   The train arrived at Altoona about 10:36 p. m. and made a stop of from seven to eight minutes.   When the train arrived at Altoona the plaintiff placed some newspapers, containing an account of the funeral which

he had attended, on his seat, and left the car for a moment by the rear end, to see a friend, and when he reentered, he discovered his papers were gone. He asked a newsboy what had become of the papers and was told that a trainman had "just gone into the baggage car with the papers." He went forward in search of the papers to the front door of the smoker and as he got there he met a trainman who had just come out of the baggage car and closed the door behind him. This was the next car in front of the smoker. The plaintiff inquired if he had seen any one with his papers and the trainman replied that the man had been in the baggage car with the papers, and pointing out through the open vestibule door added: "There's the man out there now." The plaintiff turned, looked and saw a man with his papers standing on the train platform in front of and about fifteen feet from the door. He attempted to leave the car by the open vestibule door. He put his hand against the railing or the side of the vestibule and moved his foot forward to what he supposed was the offset leading to the first step, moved his foot down and his body forward, fell to the station platform and was severely injured. The vestibule door was open but the trapdoor covering the steps leading to the station platform was not raised. The trainman who directed the plaintiff's attention to the party standing on the station platform who had the papers called to the plaintiff as he fell but too late to prevent the accident.

The plaintiff testified that the light in the vestibule was very dim or out; that it was so dark he could not see the trapdoor or steps; that the arc lights shining in his face from the station platform and from the streets of Altoona dazzled and blinded his eyes; that he assumed the trapdoor over the vestibule steps was up since the vestibule door was wide open; that he more particularly rested on this assumption because the train was at a regular dining station where an extended stop was

made and where the passengers, by implication, were invited to leave the train to secure refreshments.

It appeared from the defendant's evidence, and it is uncontradicted, that the vestibule door was closed when the train arrived at Altoona.

The case was submitted to the jury and a verdict was returned for the plaintiff. Judgment was entered on the verdict and the defendant has taken this appeal. The defendant contends that the evidence failed to disclose any negligence on its part, that there is no presumption of negligence on the part of the defendant, and that the plaintiff was required to prove some negligent act of the defendant which resulted in his injuries. It is also contended by the defendant that the plaintiff did not show how the vestibule door became open or that it stood open a sufficient length of time to charge the defendant with negligence. It is further claimed that the plaintiff was guilty of contributory negligence in that, if he had exercised proper care and used his eyes, he could have discovered that the trapdoor was down before he attempted to leave the car.

It may be considered as settled, in the language of AGNEW, J., in Meier v. Pennsylvania Railroad Co., 64 Pa. 225, 230, that a presumption of negligence arises from an accident to a passenger when it is caused by a defect in the road, cars or machinery, or by want of diligence or care in those employed, or by any other thing which the company can and ought to control as a part of its duty, to carry passengers safely. In Thomas v. Philadelphia & Reading R. R. Co., 148 Pa. 180, Chief Justice PAXSON says (p. 183) : "The rule appears to be that, where a passenger is injured, either by anything done or omitted by the carrier, its employees, or anything connected with the appliances of transportation, the burden of proof is upon the carrier to show that such injury was in no way the result of its negligence." Mr. Justice THOMPSON, delivering the opinion in Fleming v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry., 158

Pa. 130, 135, says: "This presumption (of negligence
on the part of the carrier) necessarily arises from the
contract of carriage, under which the passenger passive-
ly trusts himself to the safety of the carrier's means of
transportation, and to the skill, diligence and care of his
servants; and by which the carrier, in consideration of
the fare, undertakes to carry safely, and, to do so, to
furnish the best means and appliances for the purpose,
and competent, skillful and diligent servants. An acci-
dent connected with them raises the presumption that
they were not such, and that the carrier was guilty of
negligence."

It is the duty of a carrier of passengers, not only to
furnish a safe means of conveyance, but also proper and
safe means of ingress to and egress from its train and
cars: Mack v. Pittsburgh Rys. Co., 247 Pa. 598.  It is
likewise its duty, not only to furnish safe appliances
and means for transporting passengers safely, but also
to furnish safe means for their exit at their destination
or at such other proper points on the line of the road as
they desire to leave the car.  Any disarrangement or
displacement of the car platform which results in injury
to a passenger when alighting is presumptive evidence
of negligence on the part of the carrier.

It is clear from the uncontroverted testimony in the
case that there was a displacement or disarrangement
of the car platform which resulted in the plaintiff's in-
juries, and this was sufficient to raise a presumption of
negligence on the part of the carrier: Amos v. Delaware
River Ferry Co., 228 Pa. 362; McBride v. McNally,
243 Pa. 206.  The vestibule door being open was an im-
plied invitation to passengers to use it as a means of
exit, and if the trapdoor had been up, as unquestionably
it should have been, the accident would not have hap-
pened.  The fact that it was down and the vestibule door
was open disclosed negligence which manifestly caused
the plaintiff's injuries.  The testimony, therefore,
showed facts which raised a presumption of negligence

on the part of the defendant carrier which it was required to rebut. This was not conclusively done by simply showing that the vestibule door was closed when the train arrived at Altoona. If, after the arrival of the train, the door was opened by a servant of the company, who left the trapdoor down, it must be considered as the act of the company and as such, having resulted in injury to the plaintiff, raises a presumption of negligence for which the defendant is liable. The evidence was ample, we think, to justify the jury in finding that the vestibule door was opened by an employee of the company. There was no evidence that any other passenger attempted to leave the train at the front end of the smoker. The uncontradicted evidence, on the other hand, is that when the plaintiff was informed that his papers had been taken by a trainman who had gone to the baggage car which was in front of the smoker that he, the plaintiff, went in the same direction, that he met another trainman at the door who had stepped into the vestibule from the baggage car door and he informed the plaintiff that the man who had his papers had just left the baggage car and was standing on the train shed platform, a few feet from the vestibule door. The man with the papers evidently did not return from the front end of the car and leave at the rear, otherwise the plaintiff would have passed him in the aisle of the car and would have seen him and the papers. The only reasonable conclusion which the jury could draw from the evidence was that a trainman who had just been in the baggage car had taken the papers, and had opened the vestibule door and made his exit from the car without raising the trapdoor. As is generally known, a baggage car does not have a platform, and hence the only means of exit between it and the smoker was the vestibule door. The evidence, therefore, warranted the jury in finding that opening the vestibule door with the trapdoor down was the act of a servant of the defendant company and was negligence on the part of the carrier for which it was

responsible to the plaintiff. If, however, there was any doubt in the minds of the jurors that the trainman who had the papers did open the vestibule door, the evidence justified the finding that both he and the other trainman who spoke with the plaintiff knew it was open, as the latter, according to the plaintiff's testimony, looked out of the vestibule door and pointed to the man with the papers on the station platform. It is apparent that the defendant's servants at least knew of, if they did not create, the unsafe condition of the platform before the plaintiff attempted to alight from the car.

The defendant contends that the plaintiff was guilty of contributory negligence because he ought to have seen that the trapdoor was down, and that as he knew there was a safe way of exit at the rear he should not have attempted to leave at the front end of the smoker. We think, however, both these questions were for the jury. It is said in 6 Cyc. 643, citing numerous authorities to sustain the text: "The question as to the negligence of the passenger in getting on board a train or car is generally one of fact for the jury, to be determined under the circumstances of the case....... The passenger must exercise reasonable care to avoid the injury on or about the platform or other place where alighting, but he has the right to assume that a place which is safe from hidden dangers is provided, and will not be guilty of contributory negligence in acting on that assumption." If the plaintiff knew that the trapdoor was down, thereby making the exit unsafe, it was his duty, in the exercise of proper care, to have left the car at its rear. He testifies, however, that as the vestibule door was open he assumed that the trapdoor was up, that he could not see the trapdoor or the steps, that the light in the vestibule was dim and he was blinded by the bright lights shining in his face from without the car. His belief that the trapdoor was up, arising from the fact that the vestibule door was open, would be strengthened by the fact that the trainman who had equal opportunity to see both

doors did not direct the plaintiff's attention to the trap-door being down, and manifestly did not discover it until later when he called to the plaintiff who then had taken the fatal step.   A passenger has the right to alight from either end of a car.   He has the right to assume that there is a safe means of egress from both ends, and can be convicted of negligence only when he attempts to make his exit after he discovers or, by the exercise of proper care, should have discovered that the place is unsafe.   Whether, therefore, the plaintiff was guilty of negligence in attempting to alight at the front end of the smoker, under the facts disclosed by the evidence, was clearly a question for the jury.

We have examined the evidence as to the permanent injuries of the plaintiff and are not convinced that the court erred in submitting the question to the jury.   The criticism by the appellant as to the insufficiency of the charge on the question of damages cannot be sustained. What was said by the court may not have been entirely adequate but it was not erroneous.   The inadequacy of the charge cannot be regarded as reversible error, in view of the fact that in reply to the court's inquiry whether any further instructions were required counsel expressed themselves as fully satisfied with the charge: Fortney v. Breon, 245 Pa. 47.   The fourth point, the subject of the fourth assignment of error, was properly refused as it assumed the existence of a disputed question of fact.

We have examined the case with care, and are not convinced that the record discloses reversible error. The controlling questions were the negligence of the defendant and the contributory negligence of the plaintiff, and both, we think, were for the jury.

The judgment is affirmed.


DISSENTING OPINION BY MR. JUSTICE MOSCHZISKER:

The majority opinion states "it is apparent that the defendant's servants at least knew of, if they did not

create, the unsafe condition of the platform"; to my mind, it is equally obvious that the plaintiff must have had the same knowledge, or that it was his own fault if he lacked the information. He was an experienced traveler, and the testimony makes it evident that, had he exercised ordinary care, he must have known the condition of the platform from which he fell. Even if he did not observe that which was plainly to be seen, when he left the body of the car, turned and "moved his foot forward," had he given ordinary thought to his action, he must have been impressed with the fact that the platform continued on a level, and hence, that the car steps were not where they should be. In other words, upon reaching the platform, if it had been in its ordinary condition, one turn would have brought the plaintiff to the car steps; he knew that these steps did not extend out from the extreme side lines of the car, hence, when he continued upon the level platform out to such side lines and walked over, it must have been obvious to him that he was stepping into space. As I read the testimony, it is plain the plaintiff did not exercise ordinary care; he was so clearly guilty of contributory negligence that the court below should have ruled the point as a matter of law; thus understanding the case, I note my dissent.