## South Covington & Cincinnati Street Railway Company v. Markel.

(Decided February 22, 1916.)

### Appeal from Campbell Circuit Court.

1. Street Railroads—Duty as Carrier of Passengers—Question for Jury.—It is the duty of a street railway company, as a carrier of passengers, to exercise the utmost degree of care and skill which prudent persons engaged in that business usually exercise to carry its passengers safely to their destination and to provide a reasonably safe means for boarding and alighting from its cars. Generally the question whether the carrier performs this duty or not is for the jury.

2. Street Railroads—Duty to Keep Steps Free From Ice and Snow. —It is the duty of a street railway company as a carrier of passengers, to exercise the highest degree of care and skill practicable under the circumstances to keep its platform and steps free from ice and snow that might be dangerous to passengers in getting on or off its cars. How frequently during periods when sleet or snow is falling the steps should be cleaned is a question that must be determined by the facts of each case.

L. J. CRAWFORD for appellant.

HEALY, HAWKINS & HAWKINS, JR., for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Markel, claiming that while attempting to alight in the night from one of the cars of the appellant company, he was caused to slip and fall from the step of the car on account of snow and ice that had accumulated on the step, by reason of which he sustained personal injuries, brought this suit against the company and had a verdict and judgment for five hundred dollars.

The answer of the company was a denial and a plea of contributory negligence.

The appellee, the only witness in his behalf, after saying that he was on his way, as a passenger on one of the cars of the company, from Cincinnati, O., to Ft. Thomas, Ky., about 10:30 at night, was asked and said:

"Q. State whether or not on that evening you took one of the cars of the defendant on your way to the Post, and if so, when and how did you leave said car? A. I did, and when I was about to leave the car, I slipped on the bottom step and broke my leg. Q. State whether or not said accident happened after you had safely landed from the car? A. The accident happened while I was getting off of the car, by slipping from the bottom step. Q. State whether or not before such accident happened you had left the car of the defendant company safely after it had stopped, and was standing on the ground with one foot on the step of the car? A. The accident happened while I was alighting from the car by stepping on the bottom step and slipping. This happened before I had alighted on the ground. Q. Please state what kind of weather there was on the day and evening of February 19, 1914—whether or not it was snowing or sleeting at the time you met with an accident, or, whether or not it had been snowing or sleeting on that day or evening, prior to your meeting with such accident, and if so, how long prior thereto? A. It was snowing and sleeting in the evening of the accident, and had been off and on for a few days prior. Q. Please state the condition of the step on the car next to the ground at the time you left said car? A. It was covered with snow and ice and very slippery. Q. Was this the step from which you slipped the time your leg was broken? A. Yes."

The conductor testified as follows: "Q. Tell what happened on the occasion? A. Mr. Markel got off the car—the other passengers got out, and he got off and stood down on the street, and put his left foot on the step and was talking to me about some cigars he had given me, and after standing there a little while, he said, 'I believe my car is coming,' and he put his left foot off and made a dash for the crossing to catch his car. As he made just one dash he slipped on the street and his right foot went under him, and he holloed, 'I have broke my leg. * * * It is no fault of yours. It is my own,

fault. It was an accident.' Q. What kind of a day was it? A. Why, it had been sleeting that day, that evening. Q. In what condition at the time he got off was the car step, the lower step? A. Perfectly clean. Q. How do you know that? A. Because I cleaned it. I always kept it clean, and put sand on it. Q. Was Markel the first off the car, or not? A. He was the last one off. Q. Did anybody else have any accident? A. No, sir. Q. Did you have any complaint about the step from anybody? A. No, sir. Q. When did you brush it off last? A. The trip before. Q. When did you put sand on the step? A. The trip before, that's twenty minutes. Q. How long did it take that car to go from that point around to that point again? A. Twenty minutes. Q. Then you mean that when you left the point before, you put the sand on? A. Yes, sir.''

On his cross-examination he was asked and said: ''Q. What did you say the weather conditions were? A. Sleeting. Q. How long had it been sleeting? A. Well, I judge it had been sleeting all afternoon—evening. Q. When did you take the run? A. 4:30. Q. Was it sleeting then? A. It was sleeting them. Q. After each trip did you put sand on the step? A. No; not each trip. Q. What trips did you put it on? A. Well, I couldn't exactly tell you what trips, but every time I thought it was necessary I put it down. Q. You can't tell exactly, but you can tell exactly that it was on this trip? A. On this trip, I do remember that, positively? Q. What makes you remember that? A. Because I cleaned off the steps entirely and then took my knife and scraped out the little holes in the grating. Q. When? A. The trip before; twenty minutes before this accident. Q. How often since half-past four did you sand the step and get down with your knife and clean out the openings. A. About three or four times. Q. How many trips did you make in that time? A. 21.''

On his re-direct examination he was asked and answered: ''Q. How far from the car did Markel fall? A. From five to eight feet. Q. You mean he was that far from the car when he fell? A. Yes, sir.''

On this evidence, which is all that was heard on the subject as to how the accident happened, the court told the jury, in instruction number one, that ''it was the duty of the servants of defendant in charge of the car in question to exercise the utmost degree of care and

skill which prudent persons engaged in that or the same business usually exercise to carry its passengers safely to their destination, and to provide for a reasonably safe means of alighting from the car, and if the jury believe from the evidence that snow and ice had accumulated upon the step of said car, so as to render it dangerous in alighting from said car, and that the same was so suffered to remain and exist for such period of time that the servants aforesaid, by the exercise of the care aforesaid, should have known of its existence, and had the time and opportunity to remove it before the accident in question, and failed to do so, and if, in addition, by reason of same, the plaintiff using himself due care and caution, nevertheless slipped and fell, and so received the injuries complained of, the jury will find for plaintiff. Unless the jury so believe, they will find for the defendant.''

In instruction number two they were told: ''The jury are further instructed that when plaintiff became a passenger on the defendant's car, it did not insure his safety, but only undertook to observe the utmost degree of care and skill which prudent persons engaged in that or a similar business, usually exercise to carry him safely to his destination, and provide him with a reasonably safe means of alighting from the car; and, unless the jury believe from the evidence that the defendant failed to use that degree of care and skill in providing that reasonably safe means of alighting from the car, and that plaintiff was injured by reason of such failure—then the law is for the defendant, and the jury should so find.''

And in instruction number three they were told: ''If the jury believe from the evidence that the step from which plaintiff fell, if he did. so, was in a reasonably safe condition for use, and that the defendant and its servants in charge of said car used the degree of care which prudent persons in the same business usually observe to keep it in a safe condition from snow and ice, under the circumstances, then the law is for the defendant. Or, if they shall believe from the evidence that the said step was in a reasonably safe condition for use, and that the snow and ice thereon, if any, was only such as would ordinarily gather there, the weather considered, while the car was in transit on one of its trips to the point where plaintiff fell, they should find for the defendant.''

In instruction number four they were told: "It was the duty of the plaintiff to exercise for his own protection such care as ordinarily prudent persons ordinarily exercise under the same or similar circumstances, and if the jury believe from the evidence that plaintiff on the occasion in question, failed to exercise such care, and such failure on his part contributed to the injuries he received, and but for such failure on his part, he would not have been injured, they will find for the defendant."

A reversal is asked on the grounds that the instructions did not properly submit the law of the case, and because the attorney for the appellee was guilty of misconduct in the argument of the case.

It appears that the appellee was not present at the trial, but his deposition taken on interrogatories was read, and the alleged objectionable argument of the attorney for the appellee consists in the fact that he said: "If the plaintiff had been here at the trial, the testimony would have been different." Counsel for the company objected to this statement and moved the court to set aside the swearing of the jury and continue the case, which motion the court overruled, saying: "The jury are to determine the case from the evidence heard on the witness stand, and while the court cannot prevent counsel from commenting on the truth or falsity of evidence, the jury are not to consider, aside from that evidence, what the evidence might be under other circumstances."

We do not find in this ground any substantial error that would justify us in reversing the case.

The duty of the company in respect to keeping its steps free from ice and snow was, we think, under the facts of this case, stated correctly in the instructions. Although the reference to cleaning the steps at the end of every trip might in some cases and under some weather conditions impose a higher degree of care than should be exacted, under other weather conditions, depending on the length of the trip, the duty to clean the steps at the end of each trip might not be a sufficient compliance with the rules of law applicable in cases like this.

A carrier of passengers, such as a street railway company, is at all times and under all circumstances required to exercise the utmost or highest degree of care and skill which prudent persons engaged in that or the

same business usually exercise in order to carry its passengers safely to their destination and to provide them with safe means of boarding and alighting from the car, and this was the measure of duty exacted by the instructions.

A street car company is not obliged to keep its steps constantly free from ice and snow, or either. This would impose on it an unreasonable duty and one that would require either the employment of extra help or the stopping of the car at frequent intervals in order that the steps might be cleaned. But a street car company as a carrier of passengers is required to exercise the highest degree of care usually employed by prudent persons engaged in that business to keep its steps free from ice and snow, so that they may be as safe for the use of passengers in boarding and alighting from its cars as this degree of care can make them. How frequently during periods when sleet or snow is falling the steps should be cleaned, is a question that must necessarily be determined by the facts of each case. Obviously no rigid rule could reasonably be set down as to the manner in which, or the times when, the steps should be cleaned.

But in the case we have it was not imposing too high a duty on the company to require it to clean it steps at the end of each trip, and this the conductor said he did, although it seems likely that the jury did not give full weight and effect to his evidence. They probably believed, as they might have done, that if he had exercised this degree of care, the steps would not have become covered with ice and snow in the manner described by Markel; and the jury had a right to believe the evidence of Markel in preference to that of the conductor.

But however this may be, we do not think the instructions are open to the criticism urged by counsel for the company. The degree of care they imposed was no higher than the measure usually exacted in cases like this. Clearly the company has no cause of complaint, because the jury were told that if the snow and ice on the step was only such as would ordinarily gather there while the car was in transit on one of its trips, they should find for the defendant, although, as we have stated, it might not be proper in many cases to point out in an instruction the duty of cleaning the steps at the end of every trip. It is not so much the duty of the

company to clean its steps at the end of every trip as it is to exercise at all times the degree of care heretofore set out, and this degree of care might require, under some conditions and on some trips, the steps to be cleaned before the trip had ended, while under other conditions and on other trips it might not be necessary to clean them at the end of every trip. In other words, whether the steps should be cleaned at the end or beginning of every trip depends on the weather conditions as well as the length of the trip. So that, generally speaking, the safe rule is to omit any mention of the trips and leave to the jury, under all the facts and circumstances developed in the case, the question of determining whether the company exercised the requisite care. Illustrative cases on this question are: Riley v. Rhode Island Co., 29 R. I., 143, 15 L. R. A. (N. S.), 523; Murphy v. North Jersey St. Ry. Co., 81 N. J. L., 706, 35 L. R. A. (N. S.), 592; Louisville Ry. Co. v. Park, 96 Ky., 580; Louisville & Nashville R. R. Co. v. O'Brien, 163 Ky., 538.

The judgment is affirmed.