## LIVINGSTON v. ATLANTIC COAST LINE R. CO.

Circuit Court of Appeals, Fourth Circuit.
October 16, 1928.

No. 2723.

D. E. Ellerbe and C. T. McDonald, both of Florence, S. C., for appellant.

F. L. Willcox, of Florence, S. C., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

NORTHCOTT, Circuit Judge. The plaintiff brought an action in the court of common pleas for Dillon county, South Carolina, against the railroad company, for personal injuries suffered while a passenger on the defendant's train. The case was subsequently removed to the District Court of the United States for the Eastern District of South Carolina, at Florence, where it was tried. The court below, on motion, directed a verdict for the defendant, from which action of the court this appeal was taken.

The plaintiff entered the train at Florence, S. C., to go to Fayetteville, N. C. He went into the smoking car, where he remained for about an hour, reading a newspaper. The accident happened before the train reached Dillon, S. C. A short time before the train reached that station the plaintiff went to the toilet, where, according to his testimony, he stayed between 8 and 11 minutes. As he stepped out of the toilet,

he made a quick step, closing the door behind him. There was a rocking of the train at this time, and the plaintiff testified that he accidentally stepped upon a banana peeling and fell against the lavatory on the other side of the aisle. In his fall, his eyeglasses were broken, and some of the glass entered one eye. As a result of it, the eye was so seriously injured that it was necessary to remove it.

Apparently, the banana peeling must have been on the floor of the car, in the aisle between the toilet, on one side, and the lavatory, on the other. Plaintiff speaks of the lights in the train as a little dim and flickering. At any rate, they must have been sufficiently clear and bright to have permitted the plaintiff to read the newspaper. The accident happened after 7 p. m., at which time the plaintiff boarded the train on February 19, 1927. The plaintiff saw other trash on the floor of the car, orange peelings, peanut hulls, and other banana skins. He said the car did not look as if it had been swept in a day or two. He did not see anybody in the smoker eating bananas while he was there, and could have seen them if they had been doing so. He did not see the banana peeling when he went into the toilet, and does not know whether it was there or not. The testimony of the plaintiff was corroborated to some extent by another witness, who was a passenger on the train in the smoker. He first saw the plaintiff after the accident, and heard some discussion about the plaintiff slipping on a banana peeling, and saw the peeling on the floor in front of the toilet door. A conversation was taking place at the time between the train porter and the plaintiff. This witness did not see any other banana peelings.

The colored porter said that, as the train was going into Dillon, he got up to go back to announce the station. He had been talking to the plaintiff, who said that he was going to the toilet, and who went there. The porter next saw the plaintiff as the train was leaving Dillon. From this testimony, it would appear that the plaintiff proceeded to the rear of the car just ahead of, or just behind, the porter, as the train was approaching Dillon. After the train left Dillon, the porter went back to the smoker and saw the plaintiff come out of the toilet. There had been a stop at the station of about three minutes. The porter testified that plaintiff said he had broken his glasses in the toilet, but said nothing about the banana peeling or stumbling outside, but did complain about hurting his eye badly.

The porter further testified that the train was in good condition and clean. The testimony of the porter was corroborated by the agent of the news company and the conductor of the train, neither of whom saw the banana peeling or any trash in the aisle of the car.

Assuming that there was a banana peeling on the floor, in the proximity of the toilet and lavatory, the evidence does not show when it was placed there, or how long it had been there before the accident. There is the evidence of the plaintiff that there was a considerable quantity of trash in the car; that the car looked like it had not been cleaned for two days. This expression of opinion as to the length of time which elapsed since the car was cleaned is not entitled to weight, but the weight of the testimony depends upon the facts stated by the witness. Thus considered, the fact is that there was trash in the car at various points not designated, but this fact does not tend to show that there was a banana peeling at the point at which the plaintiff testifies he was thrown off his balance. The testimony as to this particular place in the car on the part of the plaintiff is that a few minutes before he had passed over it, and did not notice the banana peeling, and on the part of the defendant, from the porter of the car, that there was no banana peeling at this point when he left the car as the train approached Dillon. The question then for decision is whether the plaintiff is entitled to recover in this case, assuming that his story is true, by simply showing that he was injured by slipping upon a banana peeling which was on the floor of the car at the time that he fell, without showing how long it had been there, or that the railroad company, through its employees, had an opportunity to notice the presence of the peeling and to remove it.

The cases chiefly relied upon by the plaintiff, are Lindsey v. Atlantic Coast Line R. Co., 173 N. C. 390, 92 S. E. 166, a North Carolina case, and Long v. Atlantic Coast Line R. Co., 238 F. 919, a decision of this circuit. The plaintiff in the Lindsey Case was injured in the smoking car of the train, when he arose from his seat to get a drink of water, by stepping on a loose bolt in the floor, of the kind used in bolting the rails of the track together. Such bolts are frequently carried by track men on the train. The defendant offered evidence tending to show that the bolt must have suddenly rolled into the aisle, and that there was not time for the defendant to discover

and remove it. The court held that the plaintiff made out a prima facie case of negligence when he showed that the bolt was on the floor of the aisle, and the burden was not on him to show how it happened to be there, or how long it had been there. The rule applicable is that the carrier is obliged to exercise the highest degree of care for the safe conveyance of passengers, and, where the passenger is injured by an apparent act of negligence while in the care of the carrier, the latter must rebut the case by evidence tending to prove that it exercised such a degree of care. The cases cited by the Supreme Court of North Carolina, however, are those in which the injury was caused by the breaking or failure of the vehicle, roadway, or other appliances owned or controlled by the carrier, and amongst them citations from the Pennsylvania courts, including Fern v. Penn. Ry. Co., 250 Pa. 487, 95 A. 590. There is also cited case of Gleeson v. Virginia Midland Railroad Co., 140 U. S. 443, 11 S. Ct. 859, 35 L. Ed. 458.

The case of Long v. Atlantic Coast Line R. Co. (C. C. A.) 238 F. 919, was one in which a passenger, passing along the aisle of the train, was caused to stumble over a suit case in the aisle, when the train lurched or jolted. There were several suit cases in the aisle when the plaintiff boarded the train, and the conductor and the brakeman passed through the aisle several times while the suit cases were there, and made no effort to remove them. The court, speaking through Judge Woods, held that it is the duty of the carrier to use due care to see that there is no obstruction in the aisle calculated to make jerks or jolts dangerous. "Therefore, leaving suit cases or other obstructions in the aisle, after the agents of the company knew or had reasonable opportunity to know of their presence, is evidence of negligence. * * * The testimony on behalf of the plaintiff tending to show that the conductor and brakeman passed through the car several times while the suit case was in the aisle was evidence to go to the jury on the issue whether it had been there so long before the accident that in the exercise of due care they would have discovered it. This conclusion is well supported by authority. Burns v. Pennsylvania R. Co., 233 Pa. 304, 82 A. 246, Ann. Cas. 1913B, 811; Stimson v. Milwaukee, etc., R. Co., 75 Wis. 381, 44 N. W. 748; Pitcher v. Old Colony St. R. Co., 196 Mass. 69, 81 N. E. 876, 13 L. R. A. (N. S.) 481, 124 Am. St. Rep. 513, 12 Ann. Cas. 886; Price v. St. Louis Transit Co., 125 Mo. App. 67, 102 S. W. 626." The court reversed the action of the District Judge in directing a verdict for the defendant. We think that the rule, as stated by Judge Woods, that the agents or employees of the company must be shown to have known, or have had reasonable opportunity to know, of the presence of the obstruction, is the correct one.

The first case above cited by Judge Woods, with approval, Burns v. Pennsylvania R. Co., was decided by the Supreme Court of Pennsylvania in 1912. It is the case chiefly relied upon by the railroad company in the case at bar. It draws the distinction between cases where a passenger is injured by something done or left undone by carrier, or its employees, in connection with the appliances of transportation, or in the conduct and management of the business relating thereto, on the one hand, and cases in which the passenger is injured by some neglect or omission on the part of the carrier in some other respect. In the first class of cases, the burden of proof is upon the carrier to show that such injury did not result from its negligence. In the second class of cases, there is no presumption of neglect on the part of the railroad company, and the burden of proof is upon the plaintiff to show by evidence that the carrier was negligent.

The passenger in the Burns Case, as in the Long Case, was injured by stumbling over a suit case placed in the aisle, which he could not see because the train was passing through a tunnel. There was evidence that the conductor and porter had passed through the car while the baggage was standing in the aisle. The court held that a dress suit case belonging to a passenger was not an appliance of transportation under the above rule, and that the duty of caring for it rested primarily upon the passenger. The negligence, if any, in the case, was that the employees of the railroad company did not discover and remove the baggage which obstructed the aisle. "The mere fact that the personal baggage of a passenger is in the aisle of a car at the exact time of the accident does not of itself raise a presumption of negligence on the part of the employees of the railroad company." There was a verdict for the plaintiff, but the case was reversed, because the charge was indefinite, and the jury might have concluded from the instruction that the presumption of negligence arose against the railroad company when the passenger placed his suit case in the aisle. The court said: "This is not the

law. The railroad company cannot be charged with the negligence of a passenger, and its only negligence in such a case is in allowing the obstruction to remain there after notice, or after it should have had notice if due care had been exercised." The following cases were cited to support the conclusion, on the point that there is no presumption of negligence, unless the appliances of transportation are involved: Thomas v. Philadelphia & R. R. Co., 148 Pa. 180, 23 A. 989, 15 L. R. A. 416; Ginn v. Pennsylvania R. Co., 220 Pa. 552, 69 A. 992; Sutton v. Pennsylvania R. Co., 230 Pa. 523, 79 A. 719.

On the second point, as to its being necessary to show that the railroad company must have an opportunity for notice, see the following: Van Winkle v. Brooklyn City R. R. Co., 46 Hun (N. Y.) 564; Pitcher v. Old Colony St. Ry. Co., 196 Mass. 69, 81 N. E. 876, 13 L. R. A. (N. S.) 481, 124 Am. St. Rep. 513, 12 Ann. Cas. 886; Lyons v. Boston Elevated Ry. Co., 204 Mass. 227, 90 N. E. 419; Price v. St. Louis Transit Co., 125 Mo. App. 67, 102 S. W. 626.

In the case of Bassell v. Hines, 269 F. 231, 12 A. L. R. 1361, in the Circuit Court of Appeals for the Sixth Circuit, opinion by Judge Denison, it was held that the rule requiring carriers to exercise the highest degree of care for the safety of passengers does not apply to the case of a passenger who was injured by stumbling over a hassock in the aisle of a car. The charge of a District Judge that the carrier need exercise only ordinary care to see that hassocks provided in a chair car, which may be moved about by the passengers at their pleasure, are not allowed to project into the aisle, was held to be correct. A stricter rule imposing the more extreme liability is the one which expresses the duty of a common carrier as to all the special perils of transportation, and applies to all the instrumentalities of transportation and their proper management and control. The reason for this rule, however, does not extend to those comparatively trifling dangers, which the passenger meets while upon a railway car only in the same way and to the same extent as he meets them daily in his home, or in his office, or on the street, and from which he easily and completely habitually protects himself.

The case of Forbes v. Pullman Co., 137 S. C. 433, 135 S. E. 563, a decision of the Supreme Court of South Carolina, is cited by defendant; but there also the court affirmed the generally accepted rule that it is the duty of the carrier to use the highest degree of care to protect a passenger from the wrong or injury of a fellow passenger only when the carrier has knowledge of facts and circumstances from which the danger may be reasonably anticipated.

In Pittsburgh, C., C. & St. L. Ry. Co. v. Rose, 40 Ind. App. 240, 79 N. E. 1094, a case where a passenger was injured by slipping on a banana peeling, there is an exhaustive discussion of this question, and the rule is laid down that·

"In all cases where an injury is sustained by a passenger while in transit, or through any defect in the appliances or operative mechanism of the means of transportation, or to any action of its servants, the carrier is held to the strictest account, but if the injury results through the carelessness of a third person, in no way connected with the carrier, * * * for whose act the carrier can only be bound after notice, * * * a very different measure of duty prevails."

To the same effect see, also, Hotenbrink v. Boston Elevated Ry. Co., 211 Mass. 77, 97 N. E. 624, 39 L. R. A. (N. S.) 419, and cases cited in footnote, and L. & N. Ry. Co. v. O'Brien, 163 Ky. 538, 174 S. W. 31, Ann. Cas. 1916E, 1084, and cases cited in note.

While it is true that, upon a motion for a directed verdict, the evidence must be considered most favorably to the opponent of the motion, it is also true, as decided by this court in Anderson v. So. Ry. Co., 20 F.(2d) 71, that: "When the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

We are of the opinion that the evidence, reviewed in the light most favorable to the plaintiff, failed to make a case that would hold the defendant liable, and the judgment below is accordingly affirmed.