842 F.2d 330
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frank E. BRYANT, Plaintiff-Appellee,
v.
ATLANTIC & PACIFIC TEA COMPANY, Defendant-Appellant.
 No. 87-5378.
 United States Court of Appeals, Sixth Circuit.
 March 28, 1988.
 
 Before RALPH B. GUY, Jr., and BOGGS, Circuit Judges and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Atlantic & Pacific Tea Company (A & P) appeals a jury verdict and damages award in favor of plaintiff-appellee Frank E. Bryant (Bryant). Bryant charged that A & P's negligence caused him, as a business invitee, to slip and fall, sustaining significant permanent physical injury to his back for which he required medical attention. Kentucky state law governed this lawsuit. A & P argued on appeal that the district court erred in denying a directed verdict in its favor on the negligence issue at the close of all the evidence at trial. A & P also argued that the damages award to Bryant was excessive. After reviewing the parties' briefs and the record, we affirm both the jury verdict and the damages award.
 
 
 2
 * On June 30, 1981, Bryant entered an A & P supermarket in Harlan, Kentucky to shop for food. As Bryant approached an aisle opposite the store's butcher shop, he slipped and fell. The time was approximately 6:45 P.M.. When attempting to get up from the fall, Bryant stepped on a bottle which caused him to fall again. After the second fall, Bryant did not try to get up, and had to be taken by ambulance to the Harlan Appalachian Regional Hospital where he was a patient for five days. After the accident, the first person to Bryant's aid was the butcher, Lawrence Bryant.
 
 
 3
 Kellis Metcalf, a customer in this store sometime before 6 P.M. and prior to Bryant's fall, testified that he had seen liquid debris on the floor at the precise spot in the store where Bryant fell. Bryant testified that his first fall was caused by liquid debris on the A & P's floor. The butcher, who first came to Bryant's aid, did not testify at trial. There was also some evidence in the record that A & P employees had not swept that area of the floor where Bryant fell since 3 P.M. that afternoon.
 
 
 4
 Based on the above evidence, the jury found that A & P had been negligent in leaving dangerous debris on the floor of its store for an unreasonably long period of time, and found that A & P's negligence was the proximate cause of Bryant's fall from which he sustained significant physical injury. In a comaparative negligence determination, the jury found that A & P was 60% negligent, while Bryant was 40% negligent. Applying this comparative negligence determination to an intitial award of $203,049.62 meant that Bryant would receive $121,829.77. His medical expenses were $3,049.62. There was medical testimony in the record indicating that Bryant's injuries to his back from the fall were permanent, substantially impairing his mobility.
 
 
 5
 After the verdict and judgment, A & P moved for judgment N.O.V. and for a new trial. The court denied A & P's motions by Order entered March 16, 1987. A & P appeals the same issues raised in the denied motions.
 
 II
 
 6
 A & P first maintains that because Bryant failed to prove any actionable negligence of A & P at trial, the district court erred in not directing a verdict in its favor after the close of all the evidence. Essentially, A & P argues that "[a]t best plaintiff's testimony only established that he fell in the A & P Store and claims to have been injured." (Brief of Appellant, 17) From A & P's standpoint, "Mr. Metcalf knew nothing about the fall except what he heard and his testimony left the jury to speculate as to the cause of plaintiff's fall." (Brief of Appellant, 17-18) We disagree.
 
 
 7
 While the plaintiff's case lacked eyewitness testimony to the accident, in our opinion it did prove enough to warrant sending the negligence issue to the jury. Our review of the record reveals that the precise negligence issue to be determined by the jury was the length of time the debris had been on the floor of the A & P before Bryant slipped and fell in it. A & P did not object to this characterization of the negligence issue by the trial judge, and contended that the debris had not been on the floor a sufficient period of time for A & P to have known about it.
 
 
 8
 In our view, A & P mischaracterizes the nature of Metcalf's testimony as hearsay. Indeed, Metcalf testified that he had been in the store prior to 6 P.M., and had seen liquid debris in the spot where Bryant slipped and fell. Metcalf's testimony concerning the presence of liquid debris on the floor independently corroborated Bryant's testimony concerning the "stuff" on the floor of the store. We find the above proof a sufficient basis for a jury to find that even if A & P did not know of the liquid debris, it should have known of its existence, since there was testimony from which the jury could infer that the debris had been on the floor for at least 45 minutes, and may have been on the floor as much as 3 hours and 45 minutes. Additionally, the fact that A & P did not elicit any testimony from the butcher who was the first person to aid Bryant after his fall in the store does not escape our notice, and may not have escaped the jury's notice.
 
 
 9
 Finally, in all of the cases A & P cites as support for its argument, there was no factual basis for determining how long debris had been on a floor before an accident. Since record testimony in the case at bar provides a sufficient factual basis from which a reasonable jury could infer negligence on A & P's part, we find those cases to be distinguishable. E.g., Cumberland College v. Gaines, Ky., 432 S.W.2d 650 (1968) (no evidence as to how long slippery substance had been on school gymnasium's floor); Lane v. Cardwell, Ky., 306 S.W.2d 290 (1957) (no factual basis as to how long a a cord had been in a stairway); Bosler v. Steiden Stores, Inc., 297 Ky. 17 (1944) (no factual basis as to how long pea pods were on the floor); Kroger Grocery and Baking Company v. Spillman, 279 Ky. 366 (1939) (no factual basis as to how long grapes were on the floor); Louisville & Nashville Railroad Company v. O'Brien, 163 Ky. 538 (1915) (no factual basis as to how long banana peel was on floor of the train).
 
 III
 
 10
 A & P next argues that the evidence in the record was as consistent with a lack of negligence as with negligence, and therefore the plaintiff's claim must fail. A & P emphasizes that plaintiff Bryant's testimony was somewhat unclear as to what initially caused his slip and fall. As support for this argument, A & P cites Stacey v. Stoner, Ky., 86 S.W.2d 1006 (1935); McAtee v. Holland Furnace Company, Ky., 252 S.W.2d 427 (1952); Roberts v. General Industries, Inc., Ky., 320 S.W.2d 619 (1959). We disagree. As stated above, the precise negligence issue to be determined by the jury was how long had the liquid debris been on the floor before Bryant slipped, tripped, and fell. Therefore, this emphasis on the lack of clarity in plaintiff's testimony as to the initial cause of his fall is unpersuasive. The record indicates that A & P made no objection to the trial court's framing of the negligence issue in this way. Moreover, the record evidence bearing on the precise negligence issue of how long had the liquid debris been on the floor was independent from the plaintiff's testimony. Record testimony revealed that liquid debris was in the precise spot where Bryant fell and injured himself at least 45 minutes before he slipped and fell, and there was also some evidence from which the jury could infer that that liquid debris had been on the floor since 3 P.M. that afternoon. In our view, a reasonable jury could find this record evidence to be more consistent with negligence than with lack of negligence on A & P's part, despite the lack of clarity in the plaintiff's testimony as to the initial cause of his slip and fall.
 
 IV
 
 11
 As its final argument, A & P argues that the damages award of $121,829.77 is excessive, given that Bryant's medical bills were only $3,049.62.
 
 
 12
 As indicated above, the jury awarded an initial amount of $203,049.62. Applying the comparative negligence determination of 60% fault to A & P, and 40% to Bryant, yields the $121,829.77 amount.
 
 
 13
 A & P recognizes that the facts of each case should determine the amount of the award, citing Slusher v. Miracle, Ky., 382 S.W.2d 867 (1964). Nevertheless, A & P presses the fact that Bryant had been involved in three prior serious automobile accidents, and had admitted to having received back injuries in at least two of them for which hospitalization was required. Additionally, A & P argues that the medical evidence in the record is "inconclusive as to whether or not plaintiff was actually injured or had any impairment as a result of the fall at the defendant's store." Dr. Stoltzfus's testimony, introduced by plaintiff, indicated that Dr. Stoltzfus could not with certainty attribute Bryant's present condition to the fall in the A & P, but did not rule out the possibility that the fall caused the injuries which now debilitate Bryant. Dr. Fischer's report was similar to Dr. Stoltzfus's report. Dr. Shafer, an orthopedic surgeon, stated that without a complete medical history from Bryant she would not be able to determine the precise cause of Bryant's current physical disability. Even Dr. Miller, the orthopedic surgeon who examined Bryant at A & P's request, could not specify with any certainty the precise cause of Bryant's present state of physical disability. Dr. Miller stated that "he's had so many different accidents and has so many different findings that go back, no sir, I don't know how in the world I could tell which one is responsible." Thus, we cannot say on the above evidence that the jury was logically foreclosed from inferring that the fall at the A & P caused the injury which now severely debilitates Bryant, and the associated pain and suffering.
 
 
 14
 Moreover, we cannot say that the damages award of $121,829.77 was so inconsistent with the nature and extent of the injuries sustained by Bryant that the jury award could be attributed to passion or prejudice. The record indicated that Bryant was determined to be 100% occupationally disabled; functionally, he was determined to have a 10% disability to the cervical back area, and a 30% disability to the lumbar back area.
 
 
 15
 In addition, there seems to be nothing in the court's charge to the jury to suggest that the damages award was the result of passion and prejudice. Our review reveals that the jury charge contains several relevant admonitions. For example, the court charged the jury as follows:
 
 
 16
 You shall award to the Plaintiff such sum as you believe, from the evidence, will fairly and reasonably compensate him for reasonable expenses incurred for hospital and medical services, and medicines and medical supplies.
 
 
 17
 You shall further award to the Plaintiff such sum as you believe from the evidence will fairly and reasonably compensate the Plaintiff for any mental and physical pain and suffering, if any, he has endured or it is reasonably certain he shall endure in the future as a result of the injury.
 
 
 18
 The court also stated in its charge to the jury that "[t]he fact that a corporation is a party must not prejudice you in you [sic] deliberations or in your verdict." It further indicated to the jury that that "[y]ou may not discriminate between corporations and natural individuals. All persons are equal in the eyes of the law, and all are entitled to the same fair and impartial consideration and to justice by the same legal standards."
 
 
 19
 Therefore, the jury verdict and damages award of $121,829.77 are AFFIRMED.